STATE of Missouri, Respondent,

v.

Nathaniel CROCKETT and Bobby Dean Edwards, Appellants.

Nos. 52320, 52921.

Supreme Court of Missouri, Division No. 2.

Oct. 9, 1967.

Modified on Court's Own Motion Oct. 26, 1967.

Charles T. Herrmann, St. Louis, James A. Bell, St. Louis, for appellants.

Norman H. Anderson, Atty. Gen., Jefferson City, James T. O'Brien, Sp. Asst. Atty. Gen., St. Louis, for respondent.

STOCKARD, Commissioner.

Defendants Bobby Dean Edwards and Nathaniel Crockett were jointly charged and tried for burglary second degree and stealing (each being charged with a previous felony conviction), and after the jury found both defendants guilty the court sentenced each to imprisonment for ten years for the burglary and five years for stealing, the sentences to run concurrently. Each defendant filed a notice of appeal, and the two appeals were assigned the same number (Case No. 52,320) by this court,

and have been treated as consolidated. Subsequently, defendant Edwards filed a motion pursuant to the provisions of Supreme Court Rule 27.26, V.A.M.R., in effect prior to September 1, 1967, which motion was overruled by the trial court without an evidentiary hearing. Defendant appealed, and that appeal (Case No. 52,921) was ordered consolidated with Case No. 52,320.

We shall first consider the appeal of defendant Crockett. In his brief, filed by employed counsel of his own selection, four assignments of error are made. Other allegations in his motion for new trial which have not been briefed are deemed waived or abandoned, Supreme Court Rule 28.02, except those which relate to the sufficiency of the information, verdict, judgment and sentence.

Defendant Crockett contends (but we note that no such contention is made by defendant Edwards) that the trial court erred in "not entering a directed verdict and judgment of acquittal" because there was insufficient evidence to sustain the judgment.

The evidence, viewed most favorably to the State, authorized the jury to find the facts as herein stated. About six o'clock of the evening of January 14, 1966, Mr. Robert Weeden, Sr., checked the doors, a transom over the back door, and the windows on the first floor of a store building located at 5588 Easton in the City of St. Louis. All were closed and locked. The first floor had recently been vacated by a tenant, but located therein there was a cigarette machine containing cigarettes and a "little candy and chewing gum" machine. Mr. Weeden then went to his living quarters which were located on the second floor. A few minutes after nine o'clock that evening he heard a noise which sounded like the breaking of glass. He went to a second floor window facing on the back yard and saw two men pull or drag a cigarette machine out of the rear door and into the yard. He told his wife to call the police, and he continued to watch the two men. When told by his wife that the police had arrived Mr. Weeden ran down the steps and to the rear of the building where he met two police officers. When the officers approached and arrested the defendants, the machine was lying on its side on the ground. The defendants were bending over the cigarette machine, and there was a screwdriver "hanging on the lock on the machine." Although Mr. Weeden stated that he could not identify the defendants as the two men he observed from the second floor window, he said the two he observed from the window were the same two arrested by the police. He determined this by reason of their "long coats and dark hats," and because his "eyes were only off of them not over two and a half or three minutes and they were in the same spot, in the same position." Mr. Weeden examined the building and found that the transom over the rear door was broken and the wire mesh covering i had been pulled off, and that a bar on the inside of the door which served as a lock was "pulled out" and the door was open. The cigarette machine had not been opened when the police arrested the defendants, and when searched no cigarettes or "change" were found on them. However, a side of the machine showed evidence of having been "pried."

Defendant Crockett did not testify, but defendant Edwards elected to do so. He stated that he and Crockett had been in a nearby tavern, and that after they left about 9:15 o'clock of the evening of January 14, 1966, they walked into the back yard of the building located at 5588 Easton, and saw two boys running and also saw the cigarette machine back of the building. While they were bent over looking at the cigarette machine they were arrested.

This evidence clearly authorized a finding by the jury of all elements of burglary second degree and stealing.

Defendant Crockett's next point in his brief is that the trial court erred in giving Instruction 12 because it "is an instruction on circumstantial evidence, and * * * it is improper to give an instruction on circumstantial evidence when there is direct evidence against the defendant, * * *."

The transcript shows that the following occurred at the conclusion of all the evidence:

"The Court: Let the record show that counsel for defendants have had copies of the court's instructions during the noon recess of an hour and twenty minutes.

"Mr. Bell [Counsel for defendant Crockett]: May the record further show that on behalf of the defendant Nathaniel Crockett I object to each and every instruction as given by the court and to each verdict form; and let the record further show that defendant Crockett hereby requests that the Court should give an instruction on circumstantial evidence."

█ The court indicated that it was "not too sure" that an instruction on circumstantial evidence was required, but "perhaps it would be appropriate" and that by renumbering the pages he could and would give it. Under these circumstances defendant Crockett is not entitled to complain on appeal that it was error for the trial court to give an instruction on circumstantial evidence. State v. Livers, Mo., 340 S.W.2d 21; State v. Swiney, Mo., 296 S.W.2d 112.

The next point presented by defendant Crockett is that the trial court "unduly limited defendant on voir dire examination when defense counsel attempted to ask the panel the following question: 'Whether or not on suspicious circumstances above [sic] they would convict.' The court refused to allow counsel for defendant [to] preface the question or to ask same which is contrary to law."

Defendant Crockett's counsel asked the jury panel several questions of a general nature. The last question was whether the jury panel members understood that if the State failed to prove the guilt of the defendant beyond a reasonable doubt it would be the duty of the jury to find the defendant not guilty. He then said this: "Of course, under Missouri law or in many lawsuits there may arise what we call suspicious circumstances, and of course suspicious circumstances of themselves, without any other evidence, are not sufficient under the law to convict a man." Counsel for the State then objected to "talking about what the law is" and the court sustained the objection, and commented: "In many cases we tell juries that crime can be proved by circumstantial evidence or by direct evidence. It is for the jury to determine whether the circumstantial evidence is sufficient. It cannot be determined before a trial starts by calling the circumstantial evidence suspicious circumstances. All of the evidence has to be weighed later, but it is not proper for counsel to say that crime cannot be proved by circumstances, and the jury must disregard Mr. Bell's statement." After some discussion about interruptions, counsel for defendant Crockett entered an objection "to the statement by the court and the ruling of the Court where it stated that suspicious circumstances of themselves were sufficient to prove a person guilty of a crime." There then followed further discussion about counsel and the court interrupting each other, and counsel then stated that he had no further questions.

It is not clear that counsel intended or attempted to ask the question set out above in his point, or that such a question would have been proper. The trial court obviously was of the impression that counsel was attempting to classify what it would consider to be "circumstantial evidence" as only "suspicious circumstances," and then impress upon the jury panel that such evidence would not, as a matter of law, be sufficient to support a finding of guilt.

It also appears from the form of the question set out in the point that counsel was attempting to obtain a commitment in advance that the jury panel members would not convict the defendant in certain circumstances.

No fixed and inflexible rule may be laid down which may in all cases determine the extent to which counsel may go in the examination of jurors upon voir dire. Such examination is conducted under the supervision of the trial court, and in such matters the court necessarily has considerable discretion. State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688. However, counsel may not on voir dire ask the individual jurors to commit themselves in a particular set of circumstances. State v. Wolfe, Mo., 343 S.W.2d 10, certiorari denied 366 U.S. 953, 81 S.Ct. 1912, 6 L.Ed. 1246 and 368 U.S. 907, 82 S.Ct. 188, 7 L.Ed.2d 101. As stated in State v. Heickert, Mo., 217 S.W.2d 561, 562, "[C]ounsel has no right on voir dire to cause the prospective jurors to pledge or speculate as to their action in certain contingencies which may later occur or arise during trial." Also, the trial court was entitled to take such action as necessary to prevent an implication that competent circumstantial evidence should be classified as nothing more than "suspicious circumstances."

There was no abuse of discretion by the action of the trial court in its control of the voir dire examination, and no prejudicial error is shown.

The final point of defendant Crockett is that the trial court "exhibited undue prejudice against defendants in several respects and did unduly influence the jury by its actions in that the court exercised a prejudice against defendant by cross-examining the State's witnesses and brought evidence that the State did not bring out, to the extent that the court became prosecutor as evidenced by the transcript."

Defendant Crockett says that "a prime example" of the prejudice is shown "wherein the Court congratulated the jury for reaching the correct verdict" and "wherein the Court accused one of the defendants of committing perjury." The record discloses that after the jury had returned its verdict the court said, "I want to thank you ladies and gentlemen for your services in this case, and also I want to thank you for reaching the right result; in other words, I agree fully with your verdict." The record also shows that subsequent to the rendition of the verdict and during the discussion between the trial court and counsel concerning punishment, the trial court said this: "I said earlier that Crockett's record of prior convictions included the fact that he pled guilty before me five years ago and was sentenced to a four-year term for burglary in the second degree and stealing, but his record is such he ought to get maximum punishment for this offense at this time; and then I had the feeling that maybe Edwards should get less, but Edwards added to his offense by committing perjury by trying to tell this fantastic story that he told as a witness, and I think that both should get substantial punishment, * * *."

These comments could have had no effect on the verdict. The trial court heard the evidence and observed the witnesses, and it cannot be said that its opinions that the jury reached the correct result and that defendant Edwards did not testify to the truth were so totally without justification that the expression of them indicated prejudice.

In addition to the page references to the above two incidents, counsel has listed in his brief under this last point 38 page references to the transcript, but with no explanation as to what there occurred, or why he considers any particular incident to demonstrate prejudice. This is not in compliance with the rules of this court. On this appeal this court is not to become an advocate for defendant and search these page references in an effort to find error. However, notwithstanding the deficiency of defendant's presentation of his point, we have read carefully every page reference

listed in the brief. On one page there was no comment or question by the court. On other pages the court ruled on objections and in doing so stated his reason for the ruling. On others, the court asked clarifying questions of the witness. On some pages more than one question was asked or comment was made by the court, and we do not know whether defendant objects to all or to one, and if the latter, which one.

In State v. James, Mo., 321 S.W.2d 698, this court pointed out that "Among the judge's inherent powers in the administration of justice is his power to interrogate witnesses; 'One of the natural parts of the judicial function * * * is the judge's power and duty to *put to the witnesses* such *additional questions* as seem to him desirable to elicit the truth more fully.'" However, this court also pointed out that the trial judge's discretionary power to interrogate witnesses in a criminal trial is subject to certain limitations. It was stated that the power of the judge to put questions to witnesses in a jury-tried criminal case "'should be exercised with greater caution'" than he might exercise in a civil case or in a case tried without a jury, and that he should not engage in protracted examination which might impair the desired atmosphere of impartiality. In other words, the trial court must not assume the role of prosecutor. See also United States v. Marzano, 2d Cir., 149 F.2d 923, 926.

From our examination of the record, and particularly those pages of the transcript referred to by defendant Crockett in his brief, we cannot reach the conclusion that the trial court abused its discretion, or used improperly its power to interrogate witnesses. We find no indication of prejudice on the part of the trial court.

We have examined those portions of the record pertaining to defendant Crockett required by Supreme Court Rule 28.02 and find no error therein.

We turn now to the appeals by defendant Edwards. In his appeal from the judgment he makes two points; one pertaining to the voir dire examination and another pertaining to argument by counsel for the State. Our examination of the transcript convinces us that there is no merit to either contention. In view of our disposition of this case further discussion is not warranted.

The trial court overruled defendant Edwards' motion pursuant to Supreme Court Rule 27.26 without a hearing. However, there are certain facts which are not in dispute and which we shall set forth. At the time of his appointment and at all times during the preparation for trial and during trial, defendant Edwards' court-appointed counsel was a "special" assistant attorney general for the State of Missouri and as such he was on an annual salary which was received in monthly installments. After counsel had filed a notice of appeal on behalf of defendant Edwards he filed with the trial court a request that he be permitted to withdraw as counsel because of his status as a "special" assistant attorney general, and he suggested "that a conflict of interest exists." He was permitted to withdraw and other counsel was appointed to represent defendant Edwards on appeal. Defendant Edwards' trial counsel at no time advised him, and it was not until after the notice of appeal was filed that defendant first learned that his trial counsel was a "special" assistant attorney general. The record affirmatively shows that the trial court had no knowledge of the status of defendant's trial counsel until the request to withdraw was filed.

Supreme Court Rule 27.26 prior to amendment effective September 1, 1967, provided that a prisoner in custody under sentence could file a motion pursuant to that rule "at any time in the court which imposed such sentence." The rule as amended expressly provides that a motion pursuant to that rule cannot be maintained while an appeal from the conviction and sentence is pending. Defendant Edwards' motion was filed with and ruled by the trial court prior to September 1, 1967, but the ap-

peal was not submitted to this court until after that date. We need not rule whether the above referred to provision of Supreme Court Rule 27.26, as amended, applies to this appeal. We shall consider the contention presented in connection with the appeal from the conviction and sentence (Case No. 52,320) as an assertion of plain error affecting substantial rights within the meaning of Supreme Court Rule 27.20(c).

The attorney general is the chief legal officer of the State of Missouri, and "When required, he shall give his opinion, in writing, without fee, to * * * any circuit or prosecuting attorney upon any question of law relative to their respective offices or the discharge of their duties," (Section 27.040), and he "shall appear on behalf of the state in the supreme court and have the management of and prosecute or defend, as the case requires, all appeals to which the state is a party other than those in which the name of the state is used as nominal plaintiff in the courts below." (Section 27.050). In addition, Section 27.030, V.A. M.S., provides that when directed by the governor, the attorney general, or one of his assistants, shall aid any prosecuting or circuit attorney in the discharge of their respective duties in the trial courts and in the examinations before grand juries, and when so directed by the trial court, he may sign indictments in lieu of the prosecuting attorney. Section 27.020 authorizes the attorney general "to appoint such assistant attorneys general as may be necessary to properly perform the duties of his office * * *. It shall be their duty to assist the attorney general in his official duties with the power and authority under his direction to represent him in the discharge of all the duties of his office." There is no statutory authority for "special" assistant atttorneys general. Defendant Edwards' trial counsel was employed by the attorney general at an annual salary, and not as special counsel for an individual or single case. Why he designated himself as a "special" assistant attorney general is not shown, but regardless of this designation, according to the statute he is an assistant attorney general, there being no statutory authority for any other, who held and now holds his office at the pleasure of the attorney general.

Defendant contends that his defense counsel, by virtue of being an assistant attorney general, without any knowledge on the part of defendant of this fact, had such a conflict of interest that he was deprived of his constitutionally guaranteed right of counsel.

In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, it was held that the federal constitution guarantees to persons accused of a crime in the state courts the right to representation by counsel. It has been ruled in numerous federal cases that a defendant in a criminal trial is denied his constitutional right to counsel if his attorney represents conflicting interests without his knowledge and assent. See, for example, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Tucker v. United States, 9 Cir., 235 F.2d 238; Goodson v. Peyton, 4 Cir., 351 F.2d 905; Craig v. United States, 6 Cir., 217 F.2d 355; MacKenna v. Ellis, 5 Cir., 280 F.2d 592; United States ex rel. Miller v. Myers, D.C., 253 F. Supp. 55. "A showing of actual prejudice is not required; all that is necessary is a showing of a conflict." United States ex rel. Miller v. Myers, supra at p. 57. As was said in Glasser v. United States, supra, the right "is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." See also Craig v. United States, supra, and Goodson v. Peyton, supra. In United States ex rel. Miller v. Myers, supra, it was said this way: "His right to counsel under the Constitution is more than a formality, and to allow him to be represented by an attorney with * * * conflicting interests * * * without his knowledgeable consent is little better than allowing him no lawyer at all. * * * This situation is too fraught with danger of prejudice, prejudice which the cold record might not indicate, that the mere existence of the conflict is sufficient to constitute a violation of

relator's rights whether or not it in fact influences the attorney or the outcome of the case." Also, "It is immaterial whether such counsel was appointed by the Court or selected by the accused, in the absence of facts constituting a waiver of the right." Craig v. United States, supra.

The question in this case is thus narrowed to whether an attorney who represents a defendant accused of crime, and who, without the knowledge and consent of the defendant, is at the time an assistant attorney general of the State of Missouri, has by reason of these circumstances such conflicting interests to result in the denial of the constitutionally guaranteed right of counsel.

In a criminal prosecution the accused is charged by the State of Missouri, and the State is not merely a nominal plaintiff. The case is generally prosecuted by the prosecuting or circuit attorney who in the performance of this duty is acting for the State of which the attorney general is the chief legal officer. By reason of being chief legal officer of the State, and because of the potential duty of the attorney general to represent the State in a criminal case on appeal, an actual interest exists, even when the case is prosecuted by the prosecuting or circuit attorney. Most of the acts of the attorney general are carried on by and through assistant attorneys general who serve as such at the pleasure of the attorney general. Each and every assistant attorney general owes a certain allegiance to the attorney general. Therefore, an assistant attorney general who acts as defense counsel for a person accused by the State of Missouri, in his capacity as an attorney owes allegiance to both parties of the litigation.

In Goodson v. Peyton, supra, it was said that an accused's constitutional guarantee to counsel does not mean that he is entitled to the most competent lawyer practicing in the area, or to one whose judgment as exercised during the trial may be said to have been superior when subjected to subsequent scrutiny, but "It does mean that the indigent defendant is entitled to a lawyer who can give to his client undivided loyalty and faithful service. A lawyer forced, or attempting, to serve masters with conflicting interests cannot give to either the loyalty each deserves." In Mac-Kenna v. Ellis, supra, court-appointed counsel for an indigent defendant had on file an application for employment with the office of the district attorney. This was held to result in a "conflict of interest." In United States ex rel. Miller v. Myers, supra, defendant's counsel, apparently selected and employed by defendant, represented in an unrelated civil matter the victims of the burglary of which defendant was charged without defendant's knowledge. It was held on habeas corpus that under these circumstances, defendant "was deprived of the assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution."

While we do not have here a question of professional ethics, but only whether the conflict of interest in the factual situation of this case resulted in denial of the constitutionally guaranteed right of an accused to counsel, we consider it appropriate to refer to a recent opinion of the Advisory Committee of the Missouri Bar. The following question was submitted to that committee: "Would it be ethical and proper for an Assistant Attorney General, * * * to accept employment on behalf of a defendant in any of the following cases: * * * (c) State criminal prosecution; * * *." The committee answered this specific question, "No."

We hasten to state that in this case we do not ascribe to the assistant attorney general who was appointed and acted as defendant's counsel anything but the highest motives. The trial judge, in ruling on the motion filed under Rule 27.26 commented favorably on counsel's ability and performance as defense counsel, and the record unquestionably justifies that comment. However, for the reasons above set forth, and in view

of the federal decisions pertaining to what constitutes a conflict of interest and the effect of such conflict on the federally guaranteed right of counsel, we are constrained to hold that in the circumstances of this case the conviction of defendant Edwards must be set aside.

The judgment in Case No. 52,320 as to defendant Nathaniel Crockett is affirmed.

The judgment in Case No. 52,320 as to Bobby Dean Edwards is reversed and the cause remanded.

The issue presented by the appeal in Case No. 52,921 is moot by reason of the ruling in Case No. 52,320, and for that reason the appeal is dismissed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.