**James O'CONNOR, Appellee,**

v.

**Jim JONES, Superintendent, Missouri Training Center for Men, Dr. Chung, FCC Medical, Appellants,**

**Avery Hutcheson, Sheriff of Mississippi County.**

**No. 91–2693.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1991.

Decided Oct. 17, 1991.

---

John Bardgett, Clayton, Mo., argued (Mark Levison, Nelson Mitten, Howard Smotkin, St. Louis, Mo., on brief), for appellants.

Jim Shoemake, St. Louis, Mo., argued, for appellee.

Before BOWMAN and LOKEN, Circuit Judges, and ROSS, Senior Circuit Judge.

BOWMAN, Circuit Judge.

This case is before the Court on interlocutory appeal from the District Court's determination that counsel representing appellants in the underlying cause should be disqualified. We reverse.

Appellee in this case is James O'Connor, plaintiff in a lawsuit brought under 42 U.S.C. § 1983 (1988) alleging that the medical treatment he received as a prisoner in the Missouri correctional system was inadequate. O'Connor was granted leave to proceed in forma pauperis and filed his section 1983 complaint pro se. He asked the court to appoint counsel to represent him in the case.

The law firm of Riezman & Blitz, P.C., entered its appearance on behalf of the defendant Missouri Department of Correc-

tions employees, appellants here, identifying the attorneys signing the Entry of Appearance as "special assistant attorneys general." O'Connor filed a pro se motion to disqualify Riezman & Blitz on the grounds that the Missouri Attorney General's contracts with that firm and with other law firms, engaging their services for the defense of prisoner civil rights suits against state employees, violated the Sherman Antitrust Act,[1] and that such contracts limited the number of attorneys available to represent indigent prisoners. Before ruling on that motion, the District Court appointed counsel for O'Connor, who then filed an amended motion to disqualify.

On June 5, 1991, the court granted O'Connor's motion to disqualify. The court held that O'Connor had standing to raise the issue by motion, apparently reaching that conclusion because O'Connor had standing to bring his civil rights claim in the first instance. *O'Connor v. Hutcheson*, No. 90–1374C(3) (E.D.Mo. June 5, 1991) (order granting motion to disqualify) (hereinafter "Order") *reprinted in* Appellants' Addendum at 1, 2–3 ("Both parties appear to agree that plaintiff and defendants have adverse legal interests in this matter and are true adversaries. Therefore, the Court concludes that plaintiff has satisfied Article III standing requirements.") (citation omitted). The court also determined that a motion to disqualify was the proper manner in which to raise O'Connor's claims concerning opposing counsel.

■ On the merits, the court held that Missouri's retention of private law firms to represent state employees in prisoner civil rights cases violates state law. The court

further concluded that, even if such contracts are authorized by Missouri law, they are in conflict with 28 U.S.C. § 1915(d)(1988), the federal statute that empowers the federal courts to request the services of counsel to represent indigent parties in federal court.[2] Thus, the court reasoned, such state law violates the Supremacy Clause of the United States Constitution and therefore is invalid.

The District Court granted defendants' unopposed motion for certification of its disqualification order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b)(1988). Both parties have represented to this Court that hundreds of prisoner civil rights cases now pending in the United States District Court for the Eastern District of Missouri, where the state defendants are represented by private counsel retained by the Missouri Attorney General to act as special assistant attorneys general, have been stayed pending the outcome of this appeal. Thus the need for the prompt resolution of the question presented by this appeal is apparent.

"[W]e review *de novo* the questions of law certified by the district court." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400 (8th Cir.), *cert. denied*, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). Our review is not circumscribed by the certified question, however, as we may consider other questions necessary to the resolution of the precise question certified by the court. *Id.*

■ The District Court entered forbidden territory when it held that the Missouri Attorney General violates Missouri law when he contracts with private law firms to engage their attorneys' services as "special assistant attorneys general." This holding

---

1. In its order of June 5, 1991, the District Court first said that it would "consider whether the action is a violation of antitrust laws," then proceeded with a cursory discussion of antitrust law as it applies to these contracts, and finally concluded, "The Court need not address this issue further since plaintiff's motion will be sustained on other grounds." *O'Connor v. Hutcheson*, No. 90–1374C(3) (E.D.Mo. June 5, 1991) *reprinted in* Appellants' Addendum at 1, 8–10. In any event, the antitrust issue was not briefed to this Court and we do not address it. *See Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 741 (8th Cir.1985).

2. The Supreme Court has held that 28 U.S.C. § 1915(d) (1988) does not authorize a federal court to require an attorney to represent an indigent party in a case in federal court. *Mallard v. United States Dist. Court*, 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). This means that attorneys "requested" to represent indigent litigants under the statute may refuse such a request without discipline or sanction. But *Mallard* explicitly leaves open the question of the inherent authority of the courts to appoint counsel to represent indigent parties. *Id.* at 310, 109 S.Ct. at 1822–23.

runs afoul of the Eleventh Amendment, as declared by the United States Supreme Court in *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The *Pennhurst* Court "concluded ... that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment," even if the state claim is in federal court under pendent jurisdiction. *Id.* at 121, 104 S.Ct. at 919. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 106, 104 S.Ct. at 911.

Even if it were constitutionally permissible for a federal court to conclude that the Missouri Attorney General is violating state law, it is by no means clear that such a violation has occurred here. The case primarily relied upon by the District Court in so holding and by O'Connor in his argument is *State v. Crockett,* 419 S.W.2d 22 (Mo.1967). In dicta, the Missouri Supreme Court said, "There is no statutory authority for 'special' assistant atttorneys [sic] general." *Id.* at 28. That comment, however, was not made in response to a party's challenge to the state attorney general's authority to make contracts with private law firms for legal representation. Further, if the *Crockett* dicta is in fact an accurate statement of Missouri law, that does not foreclose the possibility that the authority for such contracts is not statutory but derives from the common law of the state. If the District Court is correct in its conclusion, then its holding affects far more than civil rights cases brought against state correctional employees by in-

digent prisoners, as the record shows that the state relies with some frequency upon outside counsel in the prosecution and defense of other civil lawsuits in federal court. *See* Affidavit of James B. Deutsch (June 19, 1991) *reprinted in* Appellants' Addendum at 61, 61–71. Moreover, the District Court's holding presumes that the state official responsible for the enforcement of the state's laws is regularly and systematically violating those laws, a presumption in which we would be loath to indulge.

The court's holding that the Missouri Attorney General's retention of private counsel conflicts with 28 U.S.C. § 1915(d) and thus offends the Constitution's Supremacy Clause is equally unavailing. Under section 1915(d), "[t]he court may request an attorney to represent any such person [proceeding in forma pauperis] unable to employ counsel." The District Court here declared:

> The majority of cases in which this Court appoints an attorney to represent an indigent litigant in a civil case are prisoner civil rights cases. The Court must maintain separate listings of attorneys who work for law firms designated as "special assistant attorneys general," and must bypass those attorneys in appointing an attorney to an indigent prisoner civil rights case. Thus, the Court concludes that the appointment of "special assistant attorneys general" interferes with the authority of this Court under 28 U.S.C. § 1915 to appoint attorneys to represent indigent litigants in civil cases.

Order at 6–7, *reprinted in* Appellants' Addendum at 6–7.[3] Therefore, according to

---

**3.** In its Memorandum Opinion denying defendants' motion for reconsideration and granting their motion for certification, the court stated its belief that the disqualification of attorneys for appointment to represent prisoners in civil rights cases because of their firms' retention by the state places a hardship upon those lawyers who are not so disqualified. *O'Connor v. Hutcheson,* No. 90–1374C(3) (E.D.Mo. July 19, 1991) (Memorandum Opinion denying motion for reconsideration, granting motion for certification) *reprinted in* Appellants' Addendum at 12, 17. It should be noted, however, that the pre-

cise number of attorneys affected by the present use of eight St. Louis law firms as special assistant attorneys general to defend prisoner civil rights cases is unclear from the record. The total number of lawyers in these eight firms appears to be approximately 360, as contrasted with the nearly 7,000 licensed attorneys who are in the geographical area encompassed by the Eastern District of Missouri and are theoretically available for appointment. We say "theoretically" because we do not know how many of these 7,000 licensed attorneys actually practice law.

the court, this state practice violates the Supremacy Clause and is unconstitutional.

■■■ We believe the District Court erred. This record simply does not support the conclusion that the Missouri Attorney General's hiring of private law firms as special assistant attorneys general to represent state employees in prisoner civil rights cases interferes in any significant way with the operation of 28 U.S.C. § 1915(d). There is neither any necessary conflict between this practice based on state law and section 1915(d) nor is there any showing that as a practical matter it renders section 1915(d) unworkable. At most, the record shows that some attorneys, their number small in comparison to the total number of attorneys in the relevant geographical area, who otherwise would be available for appointment under section 1915(d) must be bypassed, and that the District Court, at some apparent inconvenience to itself, must keep those attorneys on a list separate from the regular appointment list. This is watery broth indeed, and it is far from sufficient to pass for a Supremacy Clause stew.

At oral argument in this appeal, counsel for O'Connor, in response to a question from the bench, affirmed that his Supremacy Clause argument is really a preemption argument, so we now address that issue. If Congress "intends to pre-empt the historic powers of the States" (and we have no doubt that the power of a state to choose its own counsel to defend its interests is one of these historic powers), the language of the statute should make such intention " 'clear and manifest.' " *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 65, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)); *see also United States v. Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971) ("unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance") (footnote omitted).

Nothing could be less clear here: 28 U.S.C. § 1915(d) does nothing more than authorize federal judges to request private counsel to represent indigent parties in cases in federal court. The statute does not say, or even imply, that state law shall be preempted to any extent whatsoever. We therefore believe that the retention of private attorneys by the Missouri Attorney General to defend the state's interests in prisoner civil rights cases is not preempted by section 1915(d).

In the end, however, we do not decide this case on its merits, as we can and must dispose of it on jurisdictional grounds. O'Connor had no standing to bring his motion to disqualify on any of the bases he has asserted, including his antitrust claim, and the motion should have been dismissed for that reason in the first instance.

■■■ We note and confirm that a federal district court has the authority to supervise attorneys practicing before it. *See United States v. Agosto,* 675 F.2d 965, 969 (8th Cir.), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982). In cases where counsel is in violation of professional ethics, the court may act on motion of an aggrieved party or may act *sua sponte* to disqualify. We do not reach the issue of whether or not the district court may use its discretionary power to disqualify counsel for reasons unrelated to professional conduct.[4] Here, there is no hint of professional misconduct of any kind by the attorneys retained by the state, nor is there any showing of injury to O'Connor as a result of the state's engagement of these attorneys. We therefore hold that the District Court disqualified counsel on a motion that it had no authority to entertain, as O'Connor had no standing to raise the question of disqualification on the grounds here at issue.

■■■ O'Connor asserts that, because he has undisputed standing to bring his section 1983 lawsuit, he also has standing to raise by motion any issue that may occur to

---

4. We have serious doubts that the district courts have such authority, absent a finding of ethical violations. *See, e.g., Jensen v. Satran,* 633 F.Supp. 1187, 1188 (D.N.D.) ("This court does not have the authority or inclination to supervise the defendants in their respective choices of counsel."), *aff'd as modified,* 808 F.2d 840 (8th Cir.1986).

him in the course of the litigation. He is mistaken. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute *or of particular issues." Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (emphasis added); *see also County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979) ("Although [the federal habeas corpus statute] authorizes the federal courts to entertain respondents' claim that they are being held in custody in violation of the Constitution, it is not a grant of power to decide constitutional questions not necessarily subsumed within that claim."); *Murchison v. Kirby,* 201 F.Supp. 122, 123 (S.D.N.Y.1961) ("this is rather a strange procedure in that the moving party seeks not a definitive relief in connection with the action to which he is a party, but rather the collateral relief of depriving plaintiffs of their counsel"). Thus O'Connor must demonstrate that he has standing to raise the issues in his disqualification motion, not merely those in his complaint, in order for the court to exercise jurisdiction over his motion. He cannot do so.

Under Article III of the Constitution, the jurisdiction of federal courts is limited to "cases" and "controversies." *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968). The standing doctrine further implicates prudential factors that the court must consider before asserting jurisdiction over a particular claim, even though there may be a live case or controversy. "[T]here are at work in the standing doctrine the many subtle pressures which tend to cause policy considerations to blend into constitutional limitations." *Id.* at 99, 88 S.Ct. at 1952 (footnote omitted). The Supreme Court "has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. at 499, 95 S.Ct. at 2205. O'Connor cannot have his motion heard in federal court unless he can demonstrate " 'injury in fact' resulting from the action which [he]

seek[s] to have the court adjudicate." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982).

Although O'Connor argues that standing for his motion to disqualify need not be asserted independently of standing for his section 1983 claim, he nevertheless contends that he does have independent standing with respect to his motion. According to O'Connor, his standing derives from his eligibility for appointed counsel. The argument is that the number of attorneys available for appointment is significantly diminished because the Missouri Attorney General's contracts with eight St. Louis-area law firms for those firms' services in representing state defendants in prisoner civil rights suits result in conflicts of interest in representing prisoners in actions against state employees for all attorneys in those firms.[5] Therefore, in O'Connor's view, his "right" to appointed counsel is adversely and therefore unconstitutionally affected by the state's contracts with private law firms.

O'Connor misapprehends his eligibility for appointed counsel. *See* Brief for Appellee at 7 ("O'Connor, and other prisoners like him, have a right to appointed counsel under the circumstances outlined in 28 U.S.C. § 1915."). The law is clear, however, that O'Connor and other indigent litigants have "no constitutional or statutory right ... to have counsel appointed in a civil case." *Nelson v. Redfield Lithograph Printing,* 728 F.2d 1003, 1004 (8th Cir. 1984). Moreover, even if they did have such a right, and assuming *arguendo* that a significant diminution in the number of attorneys available for appointment is in fact the result of the state's actions, that hardly conveys standing upon O'Connor. "The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen,* 392 U.S. at 99, 88 S.Ct. at 1952. O'Connor in fact enjoys the services of highly capable counsel appointed initially by the District Court, so he has

---

5. As we noted *supra* at n. 3, the record is inadequate to support this argument.

not been injured by the state's retention of private attorneys to represent its interests in his lawsuit. He cannot base his claim of injury on a wholly speculative injury to others.

Because O'Connor has no standing to bring a motion to disqualify appellants' counsel on any of the grounds set forth in his motion, including his antitrust ground, we remand to the District Court with instructions that its order granting O'Connor's motion be vacated, and that an order granting appellants' motion to strike be entered.