Greg COLYER and Riverside Sheriff's Association, a not-for-profit mutual benefit association, Plaintiffs,

v.

Larry SMITH, individually and as Sheriff of Riverside County; Tim Botts, individually and as Assistant Sheriff of Riverside County; Robert Doyle, individually and as Assistant Sheriff of Riverside County; Randall Yankee, individually and as Chief Deputy of Riverside Sheriff's Department; Darla Singerton, individually and as Captain of Riverside Sheriff's Department; County of Riverside, a political subdivision and local government entity; and Does 1 through 100, Incl., Defendants.

No. ED CV 98–101 RT(VAPx).

United States District Court,
C.D. California.

May 25, 1999.

Michael P. Stone, Muna Busailah, Mark Berger, Lan Wang, Larry Roberts, Michael P. Stone, P.C. Lawyers, Pasadena, CA, for plaintiff.

Michael A. Bell, Bell, Orrock & Watase, LLP, Riverside, CA, for defendants.

### ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

TIMLIN, District Judge.

The Court, the Honorable Robert J, Timlin, has read and considered plaintiff Greg Colyer's motion to disqualify defendants' counsel, defendants' opposition thereto, and plaintiff Colyer's reply. The Court concludes as follows:

## I.

### BACKGROUND

This case represents yet another legal reverberation of the April 1, 1996 high-speed pursuit and forcible arrest of suspected undocumented aliens by former Riverside County deputy sheriff Tracy Watson (Watson). *See also Watson v. County of Riverside,* 976 F.Supp. 951 (C.D.Cal.1997), ED CV 96–0148 RT (VAPx); *Sotero–Vasquez v. County of Riverside,* Case No. ED CV 96–227 RT (VAPx); *Flores v. County of Riverside,* Case No. ED CV 96–227 RT (VAPx). In this action, Riverside County deputy sheriff Greg Colyer (Colyer) and co-plaintiff Riverside Sheriff's Association (RSA) sue the County of Riverside (County), the County Sheriff, and top officials in the County's Sheriff's Department for depriving Colyer of certain federal constitutional rights in violation of 42 U.S.C. § 1983, the California Constitution and various state statutes.

Plaintiffs allege that Colyer was transferred from his duties as a teacher and trainer at the County's Ben Clark Training Center and was disqualified from consulting and testifying as an expert witness for the Sheriff's Department in civil litigation in retaliation for testimony that he gave as an expert witness regarding use of force techniques during Watson's administrative appeal and hearing concerning Watson's termination as a deputy Sheriff. Plaintiffs allege that Colyer's testimony at the hearing, which expressed the opinion that Watson's use of force on April 1, 1996 was within the policies and training of the Sheriff's Department and was reasonable under the circumstances, directly conflicted with the testimony of a different expert witness, also employed by the Sheriff's Department, at the proceedings which led to Watson's termination.

Currently before the Court is Colyer's motion to disqualify defense counsel. The motion will be denied.

## II.

### FACTS RELEVANT TO DISQUALIFICATION

The parties do not dispute the relevant facts, although the Court does note that neither party submits proper evidence to support its factual assertions. A motion to disqualify should be accompanied by declarations and admissible evidence sufficient to establish the factual predicate upon which the motion depends. *See* Local Rule 7.5.2; *Yagman v. Republic Insurance,* 136 F.R.D. 652, 655 (C.D.Cal.1991) (unsupported factual contentions in motion to disqualify violate Local Rule 7.5.2); *Smith, Smith & Kring v. Superior Court (Oliver),* 60 Cal.App.4th 573, 577–78, 70

Cal.Rptr.2d 507, 509 (1997) (absent evidentiary support, court on motion to disqualify should disregard factual contentions made in moving papers).

Nevertheless, the Court finds the undisputed, relevant facts to be as follows: In response to the April 1, 1996 use of force incident referenced above, the County's Sheriff's Department (the Department) initiated an internal investigation of Watson. This investigation led to the termination of Watson's employment by the Department. Watson sought reinstatement by means of an administrative arbitration, and Colyer testified on Watson's behalf at the lengthy arbitration hearing. As alleged, the substance of Colyer's testimony was that Watson's use of force was reasonable and within the scope of Department policy.

Watson was not reinstated, and Colyer asserts that court review of the arbitrator's decision will be sought in state court pursuant to California Code of Civil Procedure section 1094.5 (section 1094.5).

The individuals arrested by Watson on April 1, 1996 filed civil suits against him and against the County of Riverside in the *Sotero–Vasquez* and *Flores* actions. Watson was represented in these actions by the law firm of Bell, Orrock & Watase, LLP (Bell, Orrock). Bell, Orrock represents the defendants in this case and that firm is the subject of Colyer's instant motion to disqualify. The civil suits were ultimately settled and are no longer pending before any court.

Bell, Orrock currently represents Watson in an unrelated excessive force case, *Sauers v. Watson,* Case No. SA CV 96–662 AHS (EEx), pending in the southern division of this Court. Bell, Orrock was not involved in the Watson arbitration at which Colyer testified, nor is the firm involved in Watson's pending civil rights suit against the County, in this Court.[1]

## III.

## ANALYSIS

Colyer contends Bell, Orrock should be disqualified from representing the defendants in this case because such representation places the firm in conflict with the interests of its current and former client, Watson, and also because Bell, Orrock lawyers are likely fact witnesses in this case. The two claims present very different issues and the Court will treat them separately.

### A. Conflict of Interest

Colyer's claim that Bell, Orrock's representation of the County presents a conflict of interest founders on the threshold question of standing. Standing, of course, is a jurisdictional matter that goes to the power of a federal court to decide an issue placed before it. The requirements for Article III standing, necessary for any party to seek relief from a federal court, are that the party have personally suffered an "injury in fact," which is causally related to the conduct in issue and redressable by a favorable decision of the court. *Lujan v. Defenders of Wildlife* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992). The burden is on the party seeking relief to establish these "irreducible constitutional minimum" elements with respect to the particular issues the party wishes to have decided. *Id.*

"Standing doctrine [also] embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights...." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *see also Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281 (1997) (discussing the prudential rule that a plaintiff's grievance must arguably fall within the "zone of interests" protected or regulated by the applicable law).

---

1. The Court takes judicial notice, *see* Fed. R.Evid. 201(c), of the fact that Colyer's counsel in the present case, Michael Stone, represents Watson in that action.

In the present case, Colyer suggests Bell, Orrock faces several conflicts of interest. Primarily, he argues that Bell, Orrock's defense of the County and individual defendants in this case will necessarily require the firm to undermine and discredit the testimony Colyer gave at the Watson arbitration. That anticipated attack violates Bell, Orrock's duty of loyalty to its current and former client Watson because (1) it contradicts a position taken on Watson's behalf during the *Sotero–Vasquez* and *Flores* cases—i.e. that Watson's use of force was reasonable—and (2) such defense could prove harmful to Watson should the state court, in an anticipated section 1094.5 administrative mandamus action by Watson against the County, order a further hearing into the propriety of Watson's termination. Similarly, Colyer argues that the result for which Bell, Orrock will advocate in this case—vindication of the Department's removal of Colyer as an expert witness and from teaching and training duties—violates the firm's duty of loyalty since Watson may need Colyer's testimony in the future, and that testimony will be less weighty because Colyer will lack the qualifications and expertise which are attributable to his continuing as a teacher, trainer and expert witness for the Department. Finally, Colyer argues that Bell, Orrock's current representation creates a risk that confidential information shared by Watson with Bell, Orrock during its representation of him will be disclosed or used in such a way as to violate Watson's attorney-client privilege.

All of these contentions turn on Bell, Orrock's violation of its duties owed to Watson. Thus, the question is: When does a party have standing to move to disqualify opposing counsel based on that counsel's breach of its duties of loyalty and confidentiality owed to a third party? There is a split of authority on the issue.

The majority view is that only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that current or former client. The leading case is *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83 (5th Cir.1976), which held that "[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *Id.* at 88.

In *Yarn Processing,* one defendant was a former client of plaintiff's counsel. That defendant filed a motion to disqualify, but was dismissed from the case before the motion was decided. Another defendant attempted to renew the motion to disqualify, or in the alternative suggested that the court should disqualify plaintiff's counsel on its own motion. The Fifth Circuit held that only the former client could object to the seemingly adverse representation. "To allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist. It would place in the hands of the unauthorized surrogate powerful presumptions which are inappropriate in his hands.... We are reluctant to extend [this power] where the party receiving such an advantage has no right of his own which is invaded." *Id.* at 90. The court, however, suggested a possible exception where the ethical violation was "manifest and glaring" or "open and obvious and confronted the court with a plain duty to act." *Id.* at 89. Thus it is unclear if the holding was a prudential one, or a constitutional one. *Cf. In re Jaeger,* 213 B.R. 578 (Bankr.C.D.Cal. 1997); *Dawson v. City of Bartlesville,* 901 F.Supp. 314 (N.D.Okla.1995); *Gilbert v. Knoxville International Energy Exposition,* 547 F.Supp. 53 (1982) (all treating standing as critical threshold inquiry but leaving room to allow third party disqualification motions under certain circumstances).

The Third Circuit relied on *Yarn Processing* in "[a]ssuming without deciding that a motion to disqualify must be brought by a former client." *In re Corn Derivatives Antitrust Litig.,* 748 F.2d 157, 161 (3d Cir.1984). In *In re Corn Derivatives,* however, the court found that the

former client had successfully joined another party's motion to disqualify, so that the motion in question had been properly considered by the trial court.

Later cases, such as *O'Connor v. Jones,* 946 F.2d 1395 (8th Cir.1991), and *Griffen by Freeland v. East Prairie, Missouri Reorg. Sch. Dist. No. 2,* 945 F.Supp. 1251 (E.D.Mo.1996), make the constitutional nature of the standing analysis more explicit. *O'Connor v. Jones,* for example, held that a prison inmate lacked constitutional standing to move to disqualify the state's retained counsel on the ground that Missouri's system of employing private law firms as "special assistant attorneys general" to defend prisoner cases violated the Sherman Act and constricted the supply of attorneys available to represent indigent prisoners. "O'Connor must demonstrate that he has standing to raise the issues in his disqualification motion, not merely those in his complaint...." *O'Connor,* 946 F.2d at 1400. O'Connor had no stake in the legal or ethical status of the state's retained attorneys, and he had a capable lawyer of his own, so he lacked standing to protest any problems with the supply of lawyers available to other prisoner plaintiffs. *Id.* at 1400–01.

*Kevlik v. Goldstein,* 724 F.2d 844 (1st Cir.1984), represents the minority view. *Kevlik* was a section 1983 action, in which the plaintiffs James and Jan Kevlik alleged they had been wrongfully arrested, beaten, jailed, and prosecuted. A fellow victim of this alleged misconduct, Southmayed, had settled his claims against the defendant town and was not a party to the action. Southmayed, however, had briefly retained an attorney (who did not ultimately represent him in settling the case) and had "explained in full detail the events that happened on the night of [his] arrest." *Id.* at 846. That briefly-retained attorney was a member of the firm that ultimately represented the town in the Kevliks' section 1983 action and, upon learning this fact, the Kevliks moved to disqualify the firm.

The town argued that only the former client Southmayed had standing to seek to disqualify the firm. The First Circuit rejected the view that only an aggrieved client could move to disqualify a disloyal current or former attorney, and held that the Kevliks' attorney had standing to bring the motion for disqualification of opposing counsel. The Court observed that Model Code of Professional Responsibility, DR 1–103(A) requires attorneys having unprivileged knowledge of ethical violations to report those violations to "a tribunal or other authority empowered to investigate or act upon such violation." Because the Kevliks' attorney was empowered, and indeed obligated, to report the conflicted status of opposing counsel, he or she could properly do so by a motion to disqualify. *See also United States v. Clarkson,* 567 F.2d 270, 271 n. 1 (4th Cir.1977).

These cases, relying on a court's well recognized power to control the conduct of the attorneys practicing before it, locate in the ethical standards and reporting duties imposed on attorneys by the Model Code of Professional Responsibility and the Model Rules of Professional Conduct a source of "rules-based" standing in *attorneys* seeking to disqualify opposing counsel for ethical violations. *See also Melamed v. ITT Continental Baking Co.,* 592 F.2d 290 (6th Cir.1979) (allowing defense counsel to move to disqualify plaintiff's counsel based on third party conflicts, but refusing to allow interlocutory appeals where such motions are denied) ("It is our conclusion that while [defense] counsel in this litigation had a right and arguably a duty to call the attention of the District Judge to the possible conflict of interest in this case [citing DR 1–103(A) ], [this does not guarantee a right of immediate appeal]."); *Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.,* 1994 WL 62124 (D.N.J.1994) (relying on both New Jersey Rule of Professional Conduct 8.4. and the inherent powers of the court in finding that an attorney had standing to move to disqualify opposing counsel on third party conflict of interest grounds).

Another approach is employed by the Delaware courts. The Delaware Supreme Court has rejected the rules-based attorney standing approach because in that state, despite the inherent power of all courts to "address, rectify and punish conduct of a party or counsel which threatens the legitimacy of judicial proceedings," it is the Supreme Court alone which "has sole and exclusive responsibility over all matters affecting governance of the bar." *In re Appeal of Infotechnology, Inc.*, 582 A.2d 215, 221–22 (Del.1990). The state chancery courts simply have no power to receive and act on complaints of technical violations of the governing rules of ethics, and thus may not enforce those rules through "extra-disciplinary proceedings" such as motions to disqualify. *Id.* at 216–17.

In *In re Appeal of Infotechnology, Inc.*, the Delaware Supreme Court rejected a bright-line rule universally denying standing to non-client litigants, holding that "[a]bsent misconduct which taints the proceeding, thereby obstructing the orderly administration of justice, there is no independent right of counsel to challenge another lawyer's alleged breach of the Rules outside of a disciplinary proceeding." *Id.* at 221. Only under certain, narrowly defined, circumstances would a non-client litigant have standing to move to disqualify opposing counsel: "Recognizing the potential abuses of the Rules in litigation ... the burden of proof must be on the non-client litigant to prove by clear and convincing evidence (1) the existence of a conflict and (2) to demonstrate how the conflict will prejudice the fairness of the proceedings." *Id.* at 221.

The Ninth Circuit has not decided the issue before this Court. In *Kasza v. Browner*, 133 F.3d 1159 (9th Cir.1998), however, the question was presented. *Kasza* was the consolidated appeal from

two closely related cases, one against the Environmental Protection Agency and certain of its officials and the other against the Air Force and certain of its officials. The defendants in the two cases were represented by the same team of lawyers from the United States Department of Justice (DOJ). One of the plaintiffs moved to disqualify the DOJ lawyers on conflict of interest grounds.

The Ninth Circuit had "difficulty seeing how [plaintiff had] standing to complain about a possible conflict of interest arising out of common representation of defendants in different civil actions, having nothing to do with [their] own representation[s]. 'As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification.'" *Id.* at 1171 (quoting *United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir.1993) (quoting in turn *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th. Cir.1976))). The government did not press the argument, however, and the court held that "even assuming that [plaintiff had] standing," *id.*, there was no basis for disqualification. Thus, the question remains open in this circuit.[2]

▮ It seems clear to this Court that a non client litigant must establish a personal stake in the motion to disqualify sufficient to satisfy the "irreducible constitutional minimum" of Article III. Generally, only the former or current client will have such a stake in a conflict of interest dispute. However, as the Delaware Supreme Court noted in *In re Appeal of Infotechnology Inc.*, in a case where the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims, she may have the constitutional standing needed to bring a motion to disqualify based on

2. The Court has not found a California decision deciding the issue presented. In addition, the Court recognizes that to the extent the question is one of standing, the issue must be resolved under federal law. *See Fiedler v. Clark*, 714 F.2d 77 (9th Cir.1983) (state law cannot alter federal standing requirements); *Federal Deposit Ins. Corp. v. United States Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir.1995) (motions to disqualify must be decided under federal law, although local rules and state rules are "not irrelevant to our inquiry").

a third-party conflict of interest or other ethical violation. In such a case, moreover, the prudential barrier to litigating the rights and claims of third parties should not stop a district court from determining the motion, because such a limitation would be overcome by the court's inherent obligation to manage the conduct of attorneys who appear before it and to ensure the fair administration of justice. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). This is undoubtedly what the *Yarn Processing* court had in mind when it indicated that a "manifest and glaring" ethical breach which "confronted the court with a plain duty to act" could be addressed on the motion of a non-client litigant. Where the ethical breach is so severe that it "obstructs the orderly administration of justice," the party who finds his claims obstructed has standing. *Cf. Doe v. Madison Sch. Dist. No. 321,* 177 F.3d 789, 790 (9th Cir.1999) ("Ordinarily, to prove an injury in fact under Article III of the Constitution, the plaintiff need only allege an injury that is 'fairly traceable' to the wrongful conduct; the injury need not be financial.") (quoting *Kane v. Johns–Manville Corp.,* 843 F.2d 636, 642 n. 2 (2d Cir.1988)).

■ On the other hand, regardless of the contents of the applicable rules of conduct, an attorney can have no sufficiently personal "injury in fact" based on the conflict status of her opposing counsel to move to disqualify that adversary. The *Kevlik* line of cases describes only a generalized attorney interest in the integrity of the legal system, insufficient in this Court's view to support standing in an attorney to move to disqualify opposing counsel. *Cf. Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) (no citizen or taxpayer standing to challenge military reserve sta-

tus of Members of Congress under the Incompatibility clause).

Moreover, in the Central District of California such an argument is particularly inappropriate. In this district, by Local Rule 2.5.1, the California Rules of Professional Conduct have been adopted. Those rules do not contain a duty to report ethical violations comparable to the duties found in Model Code of Professional Responsibility, DR 1–103(A) and Model Rule of Professional Conduct 8.3, relied upon by the *Kevlik* court and others. In California, the only duty is not to "knowingly assist in, solicit, or induce any violation of [the rules]." Cal.R.Prof.Cond., Rule 1–120, and "[n]othing in [the] rules shall be deemed to create, augment, diminish, or eliminate any substantive legal duty of lawyers or the non-disciplinary consequences of violating such a duty." Cal.R.Prof.Cond., Rule 1–100(A). Thus, the *Kevlik* rationale, whatever its validity in other jurisdictions, is inapplicable in this district.[3]

■ Colyer's conflict of interest arguments all turn on Bell, Orrock's purported breach of its duties of loyalty and confidentiality to its current and former client, Watson.[4] Yet Colyer has no legally cognizable interest in Bell, Orrock's breach of its duties owed to Watson. Only Watson has standing to request this Court to enforce those duties by disqualifying Bell, Orrock in this action. Colyer simply has no personal stake in the breach of loyalty between Bell, Orrock and Watson which he perceives. *Cf. Conn v. Gabbert,* —— U.S. ——, ——, 119 S.Ct. 1292, 1296, 143 L.Ed.2d 399 (1999) ("Gabbert clearly had no standing to raise the alleged infringement of the rights of [third party] Tracey Baker. 'The plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'")

---

**3.** The Court further observes that Colyer's attorney has not personally moved or participated in Colyer's motion. This motion to disqualify defendants' attorneys is solely by Colyer, a non client litigant.

**4.** Due to its resolution of the standing question, the Court does not reach, and expresses no opinion on, the question of whether or not Bell, Orrock's representation here does actually conflict with either of those duties.

(quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).

Colyer suggests that *Coles v. Arizona Charlie's*, 973 F.Supp. 971, 973 (D.Nev. 1997) demonstrates his "obligation to bring to the attention of the Court any circumstance that could affect the fairness of the proceedings, or the vulnerability of any verdict rendered." *Plaintiff's Reply to Defendants' Opposition to Motion to Disqualify* at 5. In addition, Colyer obliquely refers to the Court's power to "maintain the integrity of the judgment, maintain public confidence in the integrity of the bar, and eliminate conflict of interest and protect confidential information." *Id.* None of these lofty values, however, implicates any personal right of Colyer which is burdened by the alleged conflict of interest. Colyer must show an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. at 2136 (quotations and citations omitted). His broad interest in the administration of justice is insufficiently concrete and particularized to support a finding of standing here. The alleged conflict—if it exists—simply does not rise to the level where it infects the proceedings and threatens Colyer's individual right to a just determination of his claims.

Perhaps in recognition of this fact, Colyer suggests that Bell, Orrock may have learned confidential information from Watson which it will use to Colyer's disadvantage in the present case. That is not a legally cognizable interest of Colyer because the only injury that results from the breach of confidentially is personal to Watson. Colyer has no standing to complain that information obtained during the commission of a wrong against a third party will be used against him. Any breach of Watson's confidence committed by Bell, Orrock in this case only intrudes upon Watson's expectation of confidentiality. *Cf. Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (defendant lacked standing to complain that his property was illegally seized from third party's purse).

Finally, to the extent Colyer argues that he has standing to complain of a breach of confidentiality because any such breach will increase his chances of losing this lawsuit, his abstract interest in winning or losing this litigation is not legally cognizable. All plaintiffs have a stake in winning the cases they file, but this tactical "interest" cannot independently satisfy Article III.

The standing requirement protects against the strategic exploitation of the rules of ethics long disfavored by the Courts. *See Optyl Eyewear Fashion International v. Style Companies*, 760 F.2d 1045, 1050 (9th Cir.1985) ("The cost and inconvenience to clients and the judicial system from misuse of the rules for tactical purposes is significant. Because of this potential for abuse, disqualification motions should be subjected to 'particularly strict judicial scrutiny.'") (citations omitted) (quoting *Rice v. Baron*, 456 F.Supp. 1361, 1370 (S.D.N.Y.1978)); *In re Appeal of Infotechnology, Inc.*, 582 A.2d at 221 ("Infotechnology cannot enforce an alleged technical violation of the Rules especially where it has become apparent that it was seeking to use disqualification as a litigation tactic."); *id.* at 219 ("[I]t is impermissible to allow surrogates to enforce the professional obligations of lawyers for tactical advantage at trial."); *Yarn Processing*, 530 F.2d at 90 (same). No rights Colyer seeks to vindicate by this litigation are implicated in Bell, Orrock's representation of defendants, and Colyer can suffer no harm from whatever attenuated conflict may exist between that firm and Watson. Accordingly, the motion to disqualify for conflict of interest is denied based on Colyer's lack of standing.[5]

---

5. The Court's analysis in the present case is not intended to apply to those criminal cases in which the government moves to disqualify defense counsel on the grounds of conflict of interest. *See, e.g. United States v. Kenney*, 911 F.2d 315 (9th Cir.1990); *United States v. Kliti*,

## B. Bell, Orrock's Lawyers as Fact Witnesses

Colyer's second ground for disqualification is his claim that attorneys at Bell, Orrock may be needed to testify as fact witnesses in this case. Colyer does have standing to bring this motion, as it directly affects his access to evidence and the orderly conduct of the trial of this action. The motion to disqualify for this reason, however, is without merit.

Colyer claims that the Department has stopped using his services as an expert witness. Bell, Orrock, in the past, has apparently been counsel of record for the County in cases where plaintiff has testified as a Department expert on behalf of the County. From this, plaintiff concludes that Bell, Orrock attorneys should be deposed, and possibly called as witnesses at trial, on the issue of Colyer's value and qualifications as an expert, and on the alleged decision to "de-select" him as an expert. Bell, Orrock has submitted a declaration from one of its attorneys stating that when Bell, Orrock does not retain an "outside" expert regarding the use of force, the Department designates which officer will testify as an "in-house" expert on that issue. That attorney always uses the Department designated in-house expert, and never selects or requests a specific individual to testify as such an expert.

■ "The drafters of the ABA Code have cautioned that the ethical rules '[were] not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel.'" *Optyl Eyewear*, 760 F.2d at 1050 (quoting Model Code of Professional Responsibility, Canon 5 n. 31). Colyer bears the burden on this motion to disqualify, and he simply fails to demonstrate his need for the testimony of Bell, Orrock lawyers. The declaration discussed above strongly suggests that Bell, Orrock's attorneys could have no information concerning the Department's reasons for "de-selecting" Colyer from expert witness duties (assuming such a "de-selection" has occurred). In addition, although Colyer contends, for the first time in his reply brief, that Bell, Orrock attorneys' testimony concerning Colyer's value and qualifications as an expert witness will be "both material and important to Mr. Colyer's fair trial," he fails to explain why such testimony cannot be obtained from other attorneys who have represented the County in cases where Colyer has testified as an expert witness. There is no suggestion that Bell, Orrock has represented the County in all cases where Colyer has given such testimony.

Finally, even if Colyer ultimately does need some testimony available only from one of defendants' attorneys, he has not demonstrated that the attorney must necessarily be disqualified. *See* Cal.R.Prof. Cond., Rule 5–210(C) (lawyer may testify in a given case as a fact witness with the informed, written consent of his client).

The Court will not disqualify defendants' chosen counsel on the basis of plaintiff's marginal showing here. If further evidence develops substantiating a clear need by Colyer for the testimony of a Bell, Orrock lawyer, Colyer may renew this motion.

## IV.

## DISPOSITION

Plaintiff Greg Colyer's motion to disqualify the firm of Bell, Orrock & Wa-

156 F.3d 150 (2d Cir.1998); *United States v. Jones*, 44 F.3d 860 (10th Cir.1995). These cases present constitutional and prudential issues completely different than those found in civil cases. In particular, the unique ethical and legal obligations of prosecutors make those cases very different. *See United States v. McClintock*, 748 F.2d 1278, 1285 (9th Cir.

1984) ("The United States Attorneys are entrusted with a unique role that includes 'the duty to protect the interests of all people, including, of course, the legitimate rights of those accused of crime in federal courts.'") (quoting *United States v. Butler*, 567 F.2d 885, 894 (9th Cir.1978) (Ely, J., concurring)).

tase, LLP from representing the defendants in this action is denied.