Mildred Lea LINTON, by her next friend Kathy ARNOLD, on her own behalf and on behalf of all other persons similarly situated, Plaintiff–Appellee,

Belle Carney, by her next friend Mary Kimble, on her own behalf and on behalf of all other persons similarly situated, Intervening Plaintiff–Appellee,

v.

COMMISSIONER OF HEALTH AND ENVIRONMENT, STATE OF TENNESSEE, Defendant–Appellee,

St. Peter Villa, Inc. (93–6142); Presbyterian Homes of Tennessee, Inc. (93–6143); RHA/Sullivan, Inc. (93–6144); Cedars Health Care Center, Inc. (93–6146); and McKendree Village, Inc. (93–6147), Intervening Defendants–Appellants.

Nos. 93–6142, 93–6143, 93–6144, 93–6146 and 93–6147.

United States Court of Appeals, Sixth Circuit.

July 19, 1994.

Gordon Bonnyman, Legal Services of Middle Tennessee, Inc., Nashville, TN, for plaintiff-appellee, intervenor-appellee.

Jennifer Helton Small, Asst. Atty. Gen., General Civil Div., Nashville, TN, for defendant-appellee.

Joseph W. Metro, Reed, Smith, Shaw & McClay, Washington, DC, William M. Barrick, Nashville, TN, for intervenors-appellants.

Before: NELSON and BOGGS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

The Intervening Defendants–Appellants are nursing homes that have sought review of the July 5, 1990, judgment of the district court adopting a remedial plan in this action under the Medicaid Act and Title VI of the Civil Rights Act. In an earlier appeal, this court concluded that the intervenors had standing to appeal the 1990 remedial plan as a result of injuries arising from the mandatory "lock-in" provision of the plan. *Linton v. Comm'r of Health & Environment,* 973 F.2d 1311, 1317 (6th Cir.1992) (*Linton I*). On July 2, 1993, the district court granted the original parties' joint motion to modify the 1990 remedial plan by replacing the mandatory "lock-in" provision with an optional one. Thereafter, on July 12, 1993, the district court, following the mandate of this court, granted the intervening defendants-appellants' motion to intervene and ordered the intervenors' notices of appeal to be filed *nunc pro tunc* to August 3, 1990. The original plaintiffs, Linton et al., and defendant, Tennessee Commissioner of Health, have now moved to dismiss these appeals for lack of jurisdiction.

The movants have first contended that this court's decision in *Linton I* confined the intervenors' right of appeal to the issue of the mandatory "lock-in" provision. Furthermore, the movants have argued that the intervenors have sought to use this appeal to assert claims and injuries that do not satisfy Article III criteria and to broaden the scope of their intervention beyond that allowed by this court in *Linton I.* In support of these arguments, movants have identified several statements in *Linton I* which they argue indicate this court's intent to limit the intervenors' arguments on appeal to the issue of the mandatory "lock-in" provision. Most specifically, they rely on this court's statement in footnote ten of *Linton I:* "The movants asserted additional injuries from the 1990 State plan; however, this court concludes that only the alleged injuries arising from the "lock-in" provision satisfy Article III criterion." *Linton I,* 973 F.2d at 1316 n. 10.

Setting aside the question of whether any such limitation or condition could be placed

upon an intervention of right, *compare Cerro Metal Products v. Marshall,* 620 F.2d 964, 970 n. 7 (3rd Cir.1980) *with Columbus–America Discovery Group v. Atlantic Mutual Ins. Co.,* 974 F.2d 450, 469–70 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993), this court concludes that *Linton I* did not place any such limitations upon the intervenors' right of appeal as argued by the movants. The contrary arguments of movants misconceive the nature of the standing requirement. Movants have correctly asserted that an intervenor must prove standing for each claim. *See e.g., International Primate Protection League v. Tulane Educational Fund,* 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991); *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *O'Connor v. Jones,* 946 F.2d 1395, 1400 (8th Cir.1991) (" 'In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute *or of particular issues.*' ") (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). They confuse the identification of an injury that provides standing with a limitation on the issues that can be joined to afford redress of that injury. Although the mandatory "lock-in" provision was identified as the alleged injury which provided standing for the intervenors, this court clearly concluded that the intervenors could pursue appellate review of the entire 1990 remedial plan. *Linton I,* 973 F.2d at 1317, 1319.[1]

■ Assuming that the intervenors did have standing to appeal the 1990 remedial plan in its entirety, the movants have also argued that the intervenors have been stripped of their standing because the mandatory "lock-in" provision which provided the anchor for their standing has been modified with an optional "lock-in" provision. Hence, the intervenors no longer suffer any injury from the 1990 remedial plan that would satisfy the Article III case or controversy requirement; consequently, their appeals should be dismissed as moot.

■ It is well-established that voluntary termination of unlawful conduct will not automatically remove the opposing party's standing. *Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29 (1944); *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). *See also, Magnuson v. Hickory Hills,* 933 F.2d 562 (7th Cir.1991); *Ciudadanos Unidos De San Juan v. Hidalgo County Grand Jury Comm'rs,* 622 F.2d 807 (5th Cir.1980), *cert. denied,* 450 U.S. 964, 101 S.Ct. 1479, 67 L.Ed.2d 613 (1981). Rather, the court must consider " 'whether there has been complete discontinuance, whether effects continue after discontinuance, and whether there is any other reason that justifies decision and relief.' " *Magnuson,* 933 F.2d at 565 (quoting 13A C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3533.7, at 350 (2d ed. 1984)). In the case at bar, this court is not required to determine if the cessation of the alleged unlawful activity is permanent because the modification agreed to by the original plaintiffs and defendant and adopted by the district court does not eliminate the injurious effects which gave rise to the intervenors' standing in the first instance. Rather, the optional "lock-in" provision still places limits on the manner in which the intervenors may allocate their beds for participation in the Medicaid program, which limits were not contained in the original provider agreements. The fact that nursing homes which elect to remain in the Medicaid program do so voluntarily does not remove the economic injury suffered as a result of the alteration to their contractual provider agreements with the state. Moreover, even those intervenors that have entirely opted out of the Medicaid program are still injured by the optional "lock-in" provision because it places limitations on their ability to re-enter the program

1. The movants have also suggested that the intervenors have changed their position as to the scope of their appeal, i.e., that in addition to generally challenging the remedial plan, the intervenors now seek to dispute the conclusion below that Tennessee's administration of its Medicaid program violated Title VI, which movants claim was not in the intervenors' original motion to intervene. This argument is without merit. The motion to intervene indicates that the intervenors had no interest in relitigating the factual findings of the district court, but the intervenors expressly stated that "[i]n [their] view, portions of the District Court's decision are erroneous as a matter of law and the remedy is onerous, overbroad, and in some respects illegal."

once they have elected to opt out. The alleged illegal conduct which gave rise to standing—the "lock-out" provision—has not been discontinued, but merely carried forward in a modified way.

An important purpose in permitting a party to intervene as of right under Rule 24(a) is to provide the intervenor an opportunity to protect an interest that would not be represented by the original parties. *Grubbs v. Norris*, 870 F.2d 343 (6th Cir.1989). In the instant case, the nursing homes were allowed to intervene for the purpose of appealing the entirety of the remedial plan because the legal maneuvering of the original parties had, at the very least, the appearance of intentionally placing their devised plan beyond the appellate review of interested parties, including the intervenors, thereby foreclosing appellate review of assigned errors integral to the adoption of the plan. In *Linton I*, this court concluded that the nursing homes had indeed alleged a sufficient injury to invoke standing under Article III and ordered that they be permitted to intervene for the purposes of pursuing an appeal to this court. The remedial plan in its present form has not, at this late date, been subjected to appellate review and the intervenors continue to state a viable injury that satisfies Article III criteria.

Accordingly, the motions to dismiss these appeals for lack of jurisdiction are denied.