Filed 9/27/21; Certified for Publication 10/18/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| VINCE MORECI,<br><br>        Plaintiff,<br><br>v.<br><br>SCAFFOLD SOLUTIONS, INC.,<br><br>        Defendant and Respondent;<br><br><br>STARSTONE NATIONAL<br>INSURANCE COMPANY,<br><br>        Intervener and Appellant. | A161193<br><br>(San Francisco County<br>Super. Ct. No. CGC17558931) |

Vince Moreci sustained work-related injuries assertedly caused by his use of a scaffolding stairwell constructed by Scaffold Solutions, Inc. (Scaffold). Moreci received workers' compensation benefits that were paid by Starstone National Insurance Company (Starstone). Moreci, while represented by Boxer and Gerson, LLP (Boxer Gerson), filed a personal injury action against third party defendants, including Scaffold. Moreci settled the case. As part of the settlement, Moreci agreed to assume the defense of Scaffold for claims arising from Moreci's accident and pay any resulting judgment.

Prior to the dismissal of Moreci's action, Starstone intervened, seeking reimbursement from the defendants for the amount of benefits it had paid to

1

Moreci.  Boxer Gerson became associated co-counsel for Scaffold, who then filed an answer to Starstone's complaint in intervention.  Starstone moved to disqualify Scaffold's attorneys on the ground they created a conflict of interest by representing Moreci in the underlying action against Scaffold, obtaining a settlement of that action, and then assuming the defense of Scaffold to Starstone's claims in intervention.  The trial court held Starstone had no standing to seek the disqualification of counsel and denied the motion.  Starstone appeals, asserting essentially the same arguments in support of standing it had raised below.  We reject its claims of error, and we affirm.

## BACKGROUND

### The Parties and the Pleadings

In June 2015, Moreci, while employed by Hydra Ventures, Inc. as a plumber, fell and injured himself at a construction project site when he descended a scaffolding staircase with uneven stair risers.  Fulton Street Construction, Inc. (Fulton) and Erik Liu were the general contractor of the construction project and an executive of Fulton, respectively.  Fulton subcontracted with Stockham Construction, Inc. (Stockham) to install exterior framing for the project.  Stockham, in turn, subcontracted with Scaffold to construct sets of temporary scaffolding stairs for the project.

Starstone was the workers' compensation carrier for Moreci's employer and paid Moreci $236,945.97 in benefits.

In May 2017, Moreci, represented by Boxer Gerson and Gary Roth, a member of the law firm, filed a personal injury complaint against Fulton and Liu.  Fulton and Liu filed a cross-complaint for indemnification and contribution, eventually amending the cross-complaint to add Scaffold as a cross-defendant.  Scaffold, in turn, filed a cross-complaint against Stockham

2

for indemnification and contribution.  Moreci did not immediately serve Starstone with a copy of the complaint.

In October 2019, Boxer Gerson gave Starstone notice of the November mediation date and copies of the underlying pleadings in the case, along with a request for further information concerning the workers' compensation benefits it had paid to Moreci.  Starstone's attorneys attended the mediation on November 19.

On November 21, a notice of settlement of the entire case was filed.

In January 2020, Starstone filed a complaint in intervention against Scaffold and Stockham seeking reimbursement for workers' compensation benefits it had paid to Moreci.

On February 25 and March 11, the trial court entered the dismissals of the complaint and cross-complaints.

On June 2, Scaffold filed a notice that its attorneys, Wolfe and Wyman, LLP, were associating attorneys Gary Roth and Eric Ritigstein of Boxer Gerson as co-counsel.  Scaffold then filed an answer to Starstone's complaint in intervention, asserting numerous affirmative defenses including the contributory negligence of Moreci's employer.

On June 29, Stockham filed a cross-complaint against Moreci for breach of written contract, express indemnity, and declaratory relief.  The claims were based on a term in the settlement agreement, whereby Moreci agreed he "will fully satisfy and obtain the release of, and indemnify, defend and hold harmless Defendants [CROSS-COMPLAINANT] from, any lien, claim, loss, demand or cause of action, by any parties, agencies, insurers (including but not limited to medical insurers and workers' compensation insurers such as Starstone), governmental entities, or others claiming to have suffered damage, loss or expense by reason of the matters at issue in the

3

Subject Action . . ." (usually referred to herein as "indemnification provision").[1]  Moreci, through his counsel Boxer Gerson, filed an answer to Stockham's cross-complaint.

**The Disqualification Motion**

On July 16, Starstone filed a motion to disqualify all of Scaffold's attorneys of record.  The motion was based on the indemnification provision.  Specifically, Starstone argued Moreci and Boxer Gerson "switch[ed] sides" in the same lawsuit by "alleg[ing] fault and liability against [Scaffold] to obtain settlement," and then, once Starstone filed its complaint-in-intervention, aligned themselves with Scaffold to use "intimate . . . case knowledge and possibly privileged information" gained by counsel in an "attempt to defeat [Starstone's] recovery claim (and thus keep settlement funds and achieve a double recovery specifically denounced by the Legislature) . . . ."  Starstone asserted counsel's "switching sides attempt has infected . . the litigation," which Starstone claimed was sufficient to give it standing as a non-client, pursuant to a Federal District Court case, *Colyer v. Smith* (1999) 50 F.Supp.2d 966 (*Colyer*).

Moreci and Scaffold separately opposed the motion.  Moreci argued Starstone lacked standing because Starstone had no "attorney-client, confidential, or fiduciary relationship with counsel."  Moreci and Scaffold

---

[1] Stockham's cross-complaint is the only document in the record in which the terms of the indemnification provision appear; a copy of the settlement agreement is not included.  Also, the indemnification provision as alleged refers to Moreci's agreement to defend and indemnify as to "Cross-Complainant" Stockham only, and not any other defendants.  However, we will assume, as the parties do, that Scaffold was a party to the settlement agreement and Moreci agreed to defend and indemnify Scaffold.  Furthermore, we note that our resolution of this appeal does not require us to interpret the indemnification provision or address whether it is enforceable, and we decline Starstone's invitation for us to do so.

each maintained Starstone also failed to establish the standing requirements under the exception in *Colyer*.

Starstone replied to the opposition, refuting the contention it lacked standing based on its right under the workers' compensation statutes (Lab. Code, § 3850 et seq.) to seek reimbursement for compensation benefits it had paid to Moreci. According to Starstone, it had standing because its reimbursement right constitutes "a clear, concrete and particularized interest" that would be invaded by Boxer Gerson's continued participation.

After conducting a hearing on August 11, the trial court denied Starstone's motion to disqualify opposing counsel for lack of standing. The trial court explained Starstone had failed to show it had an attorney-client relationship with Scaffold's attorneys. It further found Starstone had no standing even under the "minority view" recognized in *Colyer* and cited by Starstone, because Starstone failed to show an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." At most, Starstone alleged merely a generalized interest in "the court's obligation to ensure the fair administration of justice," an interest insufficient "to give a non-client standing."

Starstone appeals.

## DISCUSSION

### The Law on Standing and Standard of Review

A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining

5

thereto."  (Code Civ. Proc., § 128, subd. (a)(5); *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846.)

"A 'standing' requirement is implicit in disqualification motions." (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356 (*Great Lakes*).)  A party moving to disqualify counsel must have a legally cognizable interest that would be harmed by the attorney's conflict of interest.  (*Id.* at p. 1357.)  Courts have found an attorney-client relationship between the complaining party and the attorney sought to be disqualified is a prerequisite to seeking disqualification.  (*Id.* at p. 1356; *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1404 ["An attorney-client relationship must have existed before disqualification is proper"].)

"Other courts, however, have slightly broadened the scope of that general rule," holding that a non-client may bring a disqualification motion based on an attorney's breach of a duty of confidentiality owed to the non-client.  (*Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 352, citing *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832 (*DCH Health Services*) ["Standing arises from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed"].)

As it did below, Starstone relies on *Colyer*, *supra*, 50 F.Supp.2d 966, which recognized what California courts have described as the "minority" view for standing to bring a disqualification motion.[2]  (See *Great Lakes*,

---

[2] Starstone asserts "there is insufficient authority to characterize standing by a non-party movant in a disqualification motion as a 'minority view.' "  We disagree.  *Colyer* itself described the view as an "exception" to the general rule that only a client or former client could object to an allegedly adverse representation.  (See *Colyer*, *supra*, 50 F.Supp.2d at p. 969, citing *In*

*supra*, 186 Cal.App.4th at p. 1357; *In re Marriage of Murchison*, *supra*, 245 Cal.App.4th at p. 852.) *Colyer* addressed the question of when a party has standing to move to disqualify opposing counsel based on that counsel's breach of its duties of loyalty and confidentiality to a third party. (*Colyer*, at p. 969.) The court noted standing to bring a disqualification motion in federal court that is based on a conflict of interest ordinarily is limited to clients or former clients, but as *Great Lakes* described, "*Colyer*, however, recognized a minority view that a non-client might have standing to bring a disqualification motion. A non-client must establish a 'personal stake' in the motion to disqualify opposing counsel that is sufficient to satisfy the standing requirements of article III of the United States Constitution. [Citation.] 'Generally, only the former or current client will have such a stake in a conflict of interest dispute.' [Citation.] But, where the ethical breach is " 'manifest and glaring' " and so 'infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims' [citation], a non-client might meet the standing requirements to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation." (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1357, quoting *Colyer*, *supra*, 50 F.Supp.2d at pp. 971–972.)

After articulating this view, the *Colyer* court, however, did not invoke the minority rule. (*Colyer*, *supra*, 50 F.Supp.2d at pp. 972–973.) The court found Colyer did not have a personal stake in the duty of loyalty opposing counsel owed to his client and would suffer no harm from any purported

---

*re Yarn Processing Patent Validity Litigation v. Leesona Corp.* (5th Cir. 1976) 530 F.2d 83, 89 (*In re Yarn Processing*).) And two of the four published California cases citing *Colyer* expressly refer to that exception as a "minority" view. (See *Great Lakes*, *supra*, 186 Cal.App.4th at p. 1357; *In re Marriage of Murchison* (2016) 245 Cal.App.4th 847, 852.)

7

breach. (*Id.* at p. 972.) It explained: "His broad interest in the administration of justice is insufficiently concrete and particularized to support a finding of standing here. The alleged conflict—if it exist[ed]—simply [did] not rise to the level where it infects the proceedings and threatens Colyer's individual right to a just determination of his claims." (*Id.* at p. 973.) The court added, "to the extent Colyer argues that he has standing to complain of a breach of confidentiality because any such breach will increase his chances of losing this lawsuit, his abstract interest in winning or losing this litigation is not legally cognizable. All plaintiffs have a stake in winning the cases they file, but this tactical 'interest' cannot independently satisfy Article III." (*Ibid.*) Thus, the court denied the motion to disqualify based on lack of standing.

*Great Lakes* read *Colyer* as "recogniz[ing] a minority view inasmuch as it permits a non-client to move to disqualify opposing counsel." (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1358.) However, "its minority view does not alter well-established standing requirements" because "the non-client must meet stringent standing requirements, that is, harm arising from a legally cognizable interest which is concrete and particularized, not hypothetical." (*Id.* at pp. 1357, 1358, citing *Colyer*, *supra*, 50 F.Supp.2d at pp. 971–973.) *Great Lakes* also agreed with *Colyer* that "imposing a standing requirement for attorney disqualification motions protects against the strategic exploitation of the rules of ethics and guards against improper use of disqualification as a litigation tactic." (*Great Lakes*, at p. 1358, citing *Colyer*, at p. 973.)

Starstone appears to propose another rule: "[S]tanding requires only that the moving party establish harm to the moving party by the continued participation of counsel . . . ." For this proposition, Starstone relies in part on

8

*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1205 (*Kennedy*),[3] which concluded "where an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel." There, in a child custody dispute between a mother and father, the trial court granted the mother's motion to disqualify the child's paternal grandfather from representing the child's father. The grandfather was an attorney who had previously represented the maternal grandfather in a family law matter, in which mother had filed declarations per the request of that attorney's firm. (*Id.* at pp. 1201–1202.) The mother also had previously worked for that attorney's firm. (*Id.* at p. 1202.) In holding the mother had standing as a non-client, the court noted that through his prior representation of the maternal grandfather, the attorney almost certainly learned confidential facts about the mother's family situation that could be used against her in the custody dispute. (*Id.* at pp. 1205, 1207–1208.) The court also explained that, "[b]ecause of the close relationship between [the mother] and her father, the similarity between the two cases and the

---

[3] Starstone also cites *DCH Health Services*, *supra*, 95 Cal.App.4th 829, and *FMC Technologies, Inc. v. Edwards* (W.D. Wash. 2006) 420 F.Supp.2d 1153. Neither stands for the broad proposition advanced by Starstone. Although Starstone correctly notes that *DCH Health Services* explained that an attorney-client relationship is not the only way to establish standing to bring a disqualification motion, it nonetheless required a confidential relationship between the movant and target attorney. (*DCH Health Services*, *supra*, 95 Cal.App.4th at pp. 832–833.) And *FMC Technologies, Inc. v. Edwards, supra,* 420 F.Supp.2d at pp. 1156–1157, cited the exception for non-client standing in *Colyer*, which, as explained above, "does not alter well-established standing requirements" although it recognizes a minority view in allowing non-clients in proper circumstances to move to disqualify counsel. (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1357.)

9

overlapping factual issues common to both, we also conclude that [mother] and her father should be treated as a single unit for purposes of determining whether an ethical conflict exists." (*Id.* at p. 1208.)

Thus, despite the broad language in *Kennedy* quoted by Starstone, it was ultimately the attorney's possession of information the non-client had shared confidentially, as well as the close relationship between the non-client and the attorney's former client, that justified disqualification. (See *Acacia Patent Acquisition, LLC v. Superior Court* (2015) 234 Cal.App.4th 1091, 1100 [observing *Kennedy*'s "holding was tethered to messy interfamilial squabbles"].) Accordingly, to the extent Starstone contends *Kennedy* supports a broad rule that any injury to it in litigation, regardless of the source, is sufficient to confer standing, we do not believe this is a fair reading of *Kennedy*.

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143.) However, where the trial court's ruling is based on a legal conclusion, such as lack of standing, we review the order de novo in light of the relevant legal principles. (*Great Lakes, supra,* 186 Cal.App.4th at p. 1354.)

**The Trial Court Properly Denied the Disqualification Motion**

As noted, the trial court concluded Scaffold had no standing to move to disqualify Boxer Gerson on two grounds: first, Starstone never had an attorney-client relationship with Boxer Gerson; and second, even in the absence of such a relationship, under *Colyer*, it failed to show counsel's continued participation would invade " 'a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or

10

hypothetical.' " Starstone contends the trial court's conclusions were error.[4] We disagree.

It is undisputed Starstone never had an attorney-client relationship with Boxer Gerson. Starstone also has submitted no evidence of any confidential or fiduciary relationship between it and Boxer Gerson, nor a legally cognizable expectation of confidentiality with Boxer Gerson. In fact, Starstone states its "disqualification motion is not based on a breach of duty of confidentiality, an expectation of confidentiality, a fiduciary relationship, a privileged relationship, breach of duty of loyalty, or a traditional conflict of interest"—as acknowledged and confirmed at oral argument that loyalty and confidentiality are "not involved." Therefore, under the general standing rules requiring "some sort of confidential or fiduciary relationship" (*Dino v. Pelayo*, *supra*, 145 Cal.App.4th at p. 353; *DCH Health Services*, *supra*, 95 Cal.App.4th at p. 832), the trial court correctly determined Starstone lacked standing to move to disqualify Boxer Gerson.

Starstone nonetheless asserts it had standing as a non-client under *Colyer*, its claimed "personal stake" based on its status as Moreci's employer's workers' compensation insurer, particularity its right under the workers' compensation statutes to seek reimbursement for benefits it paid to Moreci. Starstone's opening brief presents a lengthy discussion of those statutes in an attempt to define the respective legal interests and obligations of an

---

[4] Although Starstone's motion sought to disqualify all of the attorneys of record for Scaffold, including Wolfe and Wyman, its claims of error on appeal are solely directed at Boxer Gerson and its member, Gary Roth. Therefore, to the extent Starstone continues to seek the disqualification of Wolfe and Wyman as well, we consider those claims abandoned. (See *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1117 ["failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the [claim of error"].)

11

employee and employer in a lawsuit involving workers' compensation and a third party.  As fleshed out below, we understand the thrust of Starstone's standing argument to be that because of the "unique relationship" between an employer and employee within the workers' compensation scheme, Boxer Gerson was prohibited from taking a position adverse to the employer once it represented the employee in a personal injury action against alleged third party tortfeasor.

Before addressing these arguments, we provide an overview of the relevant workers' compensation laws.

An employee injured in the course of employment is entitled to receive compensation benefits from his or her employer without regard to negligence of either the employee or the employer.  (Lab. Code, § 3600, subd. (a).)  The employee's claim for compensation benefits is the employee's exclusive remedy against the employer; the employee generally may not sue the employer to recover in tort.  (*Id.*, §§ 3601, 3602, subd. (a).)  But this does not preclude suit by the employee against a negligent third party.  (*Id.*, § 3852).

An employee or employer who sues a third party is required to notify the other forthwith by personal service or certified mail and file proof of service in the action.  (Lab. Code, § 3853.)  The employer has a right to intervene in any action brought by the employee against a third party tortfeasor.  (*Ibid.*)

To prevent an employee from retaining a double recovery—i.e., both third party damages *and* workers' compensation benefits for the same injuries and disabilities—an employer may recoup the benefits it has paid to the employee by utilizing any of three different means:  (1) a direct action against the third party (Lab. Code, § 3852); (2) as a party or an intervener in an action by the employee against the third party (*id.*, § 3853); or (3) as a lien

claimant against the employee's recovery in an action against the third party (*id.*, § 3856, subd. (b)). (*Abdala v. Aziz* (1992) 3 Cal.App.4th 369, 374–375.) The employer's right to reimbursement may be limited or denied if the employer's negligence contributed to or caused the employee's injuries. (*DaFonte v. Up–Right, Inc.* (1992) 2 Cal.4th 593, 599; *Witt v. Jackson* (1961) 57 Cal.2d 57, 69, 71–73 (*Witt*).)

"The California workers' compensation scheme seeks to ensure that, regardless of whether the employee or the employer sues the third party, both recover their due, and, as far as possible, the third party need defend only one lawsuit." (*O'Dell v. Freightliner Corp.* (1992) 10 Cal.App.4th 645, 653 (*O'Dell*).)

With respect to the settlement of claims with a third party tortfeasor by either the employee or employer, prior to 1971, no such settlement was valid without the written consent of the other. (*O'Dell*, *supra*, 10 Cal.App.4th at p. 655.) "This provision prevented both the employee and the employer from settling with a third party tortfeasor at the expense or disadvantage of the other and encouraged employers and employees to settle their claims simultaneously. [Citations.]

"However, when the Supreme Court in *Witt*[, *supra*, 57 Cal.2d 57] held the third party tortfeasor could assert the employer's concurrent negligence to defeat the employer's subrogation rights, the mutual consent provision gave the negligent employer 'bargaining power in the settlement context unrelated to the likelihood of its success in any litigation. By taking advantage of an employee's or third party's interest in a quick settlement, a contributorily negligent employer could conceivably coerce an employee or third party into allowing it to share in a settlement.' [Citations.]

13

"In order to free the employee from the necessity of obtaining the employer's consent before settling with a third party tortfeasor, the Legislature amended sections 3859 and 3860 in 1971.  Subdivision (b) was added to section 3859.  It states:  'Notwithstanding anything to the contrary contained in this chapter, an employee may settle and release any claim he [or she] may have against a third party without the consent of the employer.  Such settlement or release shall be subject to the employer's right to proceed to recover compensation [the employer] has paid in accordance with Section 3852.'  [Citation.]

"Section 3860, subdivision (b), was amended to read in part:  'Except as provided in section 3859, the entire amount of such settlement, with or without suit, is subject to the employer's full claim for reimbursement for compensation [the employer] has paid or become obligated to pay . . . .'

"These amendments permitted an employee to segregate his or her own damage claim from the employer's claim for reimbursement for workers' compensation benefits paid.  'The employee thus is permitted to settle his [or her] own claim for a sum exclusive of amounts . . . already received in the form of a workers' compensation award without jeopardizing the employer's subrogation right.' "  (*O'Dell*, *supra*, 10 Cal.App.4th at pp. 655–656.)

The chapter of the Labor Code establishing these remedies defines the term "employer" to include its insurer.  (Lab. Code, § 3850, subd. (b).)  "The remedies available to the employer therefore are equally available to the insurer, and the insurer may sue in its own name without joining the employer as a party."  (*Duncan v. Wal-Mart Stores, Inc.* (2017) 18 Cal.App.5th 460, 469.)  Thus, we sometimes refer to Starstone as Moreci's "employer."

With these principles in mind, we now turn to Starstone's arguments.

14

As discussed above, Starstone argues it had standing to move to disqualify Boxer Gerson under the exception in *Colyer*, *supra*, 50 F.Supp.2d 966, which requires a showing that counsel's manifest ethical breach infected the litigation and sufficiently impacted Starstone's interest in a just determination of its claims. (See *id.* at pp. 968, 971–972.) The purported ethical breach here is Boxer Gerson "switching sides," by representing Moreci in the lawsuit against Scaffold, and then, after settling the case, assuming Scaffold's defense, pursuant to the indemnification provision. According to Starstone, it is improper for "an attorney for an injured worker who has settled with a third party without the employer's consent [to] switch sides to represent the defendant." The premise of Starstone's arguments is that the workers' compensation statutes recognize the employer-employee relationship as one of "sanctity" and "do[] not allow . . . the employee to be directly adverse [to] the employer as to workplace injury claims. " Starstone further argues the alleged ethical breach "threatens [Starstone's] right to a full and fair determination of its claims" because it will "frustrate and/or impede/defeat [its] reimbursement request and/or achieve a double recovery" for Moreci. In a related argument, Starstone contends Boxer Gerson has "obtain[ed] access to intimate, confidential case information through [its] prior and concurrent representation of employee Moreci" that will be used to Starstone's disadvantage.[5] Starstone also maintains Moreci's failure to give timely notice of his lawsuit affords it standing because it prejudiced Starstone by giving its adversaries an "opportunity to frame the issues and develop the evidence without [its] participation."

---

[5] A contention that is in apparent conflict with Starstone's concessions in its briefs and representation at oral argument.

15

We are not persuaded.  To begin with, we disagree with the premise of Starstone's arguments—that the legal interests of an employee and employer cannot be adverse to each other in litigation involving workers' compensation and a third party.  It is true an employee may not directly sue an employer for injuries sustained while in the course and scope of employment.  (Lab. Code, §§ 3601, 3602, subd. (a).)  It is also true an employer's subrogation action is derivative of the employee's action against a third party.  (*Board of Administration v. Glover* (1983) 34 Cal.3d 906 (*Glover*).)  However, it does not necessarily follow from these principles that the legal interests of the employee and employer must be aligned, such that the employee is charged with a duty to safeguard the employer's right to sue a third party.  Thus, to the extent Starstone assumes Moreci and Starstone should be treated as having a mutuality of interests for purposes of determining whether an ethical conflict exists, such an assumption is flawed.

Starstone relies on *Glover, supra,* 34 Cal.3d 906, for the proposition that the intertwined nature of the employee's and the employer's claims was recognized by the pre-1971 consent requirement, the purpose of which was to " 'protect the rights and interests of employee and employer and . . . prevent or discourage either of them from obtaining a recovery from the third party at the expense or the disadvantage of the other.' " (*Glover,* at p. 913, citing *Brown v. Superior Court of San Bernardino County* (1970) 3 Cal.3d 427, 433 (*Brown*).)  Starstone also cites *Carden v. Otto* (1974) 37 Cal.App.3d 887 (*Carden*), which stated an employee cannot, "in settling his claim, impair to any degree the ability of the employer to effectively litigate as against the third party." (*Id.* at p. 896.)   However, the quoted excerpts do not assist Starstone, since, as Starstone acknowledges, they were referring to pre-1971 Labor Code sections 3859 and 3860, which prohibited settlement of claims

16

against third party tortfeasors by employers or employees without the consent of the other. (See *Glover*, at pp. 913–914; *Carden, supra,* 37 Cal.App.3d at p. 896.) Those provisions were amended in 1971 to "authorize[] an employee's settlement of his own unreimbursed claim for damages without the employer's approval and recognize[] the employer's independent right to proceed against the alleged tortfeasor to recovery payments it had made to its employee." (*Glover*, at p. 914.)

Courts have refuted the notion that in the workers' compensation context, an employee, relative to his or her employer, is akin to trustee, fiduciary, or legal representative or in privity—that is, "a person is so identified in interest with another that he represents the same legal right." (*Carden*, *supra*, 37 Cal.App.3d at p. 892; see *O'Dell*, *supra*, 10 Cal.App.4th at pp. 658–660.)

*O'Dell* is instructive. That case involved the analogous situation concerning an employer's standing to set aside the dismissal of its employee's personal injury action against a third party following the employee's settlement of that action. (*O'Dell*, *supra*, 10 Cal.App.4th at pp. 658–660.) *O'Dell* found that only a party to an action or his or her legal representative may seek to set aside a dismissal under Code of Civil Procedure section 473, and the employer had been neither a party nor a legal representative. (*O'Dell*, at pp. 658–660, citing *Roski v. Superior Court* (1971) 17 Cal.App.3d 841, 846.) *O'Dell* explained that upon the employee's voluntary dismissal of the lawsuit, it terminated, and the filing of a lien after the dismissal could not confer standing on the employer. (*O'Dell*, at p. 659.) In so holding, the court rejected the employer's assertion that the employee and employer were "in privity" or that they had a relationship analogous to "a trust or fiduciary relationship" for purposes of standing. (*Ibid.*)

17

The *O'Dell* court cited *Carden*, *supra*, 37 Cal.App.3d 887, in which an employer moved to set aside a judgment entered after the employee and a third party had litigated the employer's negligence in the employer's absence. (*O'Dell*, *supra*, 10 Cal.App.4th at pp. 659–660, citing *Carden*, at pp. 890–891.) *Carden* refuted the view " 'that . . . the employee represents the employer in a manner analogous to a trustee bringing an action on behalf of the beneficiaries.  This, of course, suggests the existence of a fiduciary relationship, one which . . . clearly does not exist.' " (*O'Dell*, at pp. 659–660, citing *Carden*, at p. 894.)  *Carden* went on:  "In litigating the issue of the employer's contributory negligence the employee does not represent the same 'legal right' as the employer. . . . '[T]he employee thus lacks such mutuality of interest in that issue as might be helpful to the employer.' " (*Carden*, at p. 892, citing *Brown*, *supra*, 3 Cal.3d at p. 433.)  Thus, "*Carden* held the adjudication of the employer's negligence was not res judicata as to the employer because it was neither a party nor in privity with a party.  No privity appeared because, *but for the exclusivity of the workers' compensation remedy, the employer would have been a defendant*." (*O'Dell*, at p. 659, citing *Carden*, at p. 894, italics added.)

Moreover, "[t]he introduction of a *Witt*[, *supra*, 57 Cal.2d 57] defense changes the complexion of the case." (*Aetna Casualty & Surety Co. v. Superior Court* (1993) 20 Cal.App.4th 1502, 1508.)  "Until that time an employee's interests do not clash with the employer's interests in a third party action; each wants to be compensated for separate items of damage.  However, once such a defense is claimed, *a conflict of interest between plaintiff and the employer arises*.  [Citation.]  Because of its alleged negligence, the amount due the employer becomes a subject of considerable dispute and *the employer cannot expect the employee to argue on its behalf*

18

*during any negotiations or at trial.*" (*Ibid.*, citing *Brandon v. Santa Rita Technology, Inc.* (1972) 25 Cal.App.3d 838, 846, italics added.)

Based on the above authorities, we conclude that in touting "the sanctity of the employer-employee relationship," Starstone overstates the nature of that relationship. The authorities refute the assertion that the legal interests of Moreci and Starstone must be aligned for all purposes. To the contrary, they indicate that where, as here, the employer's negligence is asserted as a defense by a third party under *Witt*, *supra*, 57 Cal.2d 57, the interests of the employee and employer become adverse. We therefore disagree with Starstone's premise that Moreci and Starstone should be treated as essentially one unit for purposes of analyzing the existence of a conflict of interest. And since that premise is flawed, it cannot support Starstone's conclusion that Boxer Gerson's assumption of Scaffold's defense created a "legal and ethical" conflict that "undermines the structural integrity of the workers' compensation system."

But even if such a conflict existed, Starstone has failed to show it was "manifest and glaring" sufficient to qualify for the exception identified in *Colyer*. (*Colyer*, *supra*, 50 F.Supp.2d at p. 972.) Starstone repeatedly asserts throughout its briefs that Boxer Gerson's continued participation will "most certainly 'jeopardize'" Starstone's right to reimbursement and result in a "double recovery" for Moreci. Starstone also cites to *Duncan v. Wal-Mart Stores, Inc.*, *supra*, 18 Cal.App.5th 460, and *Bailey v. Reliance Insurance Co.* (2000) 79 Cal.App.4th 449, to argue counsel's conduct was aimed to "manipulate[] the employer's right to reimbursement" or " 'colluded . . . to make a bad faith and/or fraudulent allocation of the settlement proceeds in order to defeat the employer's third party credit rights.' " But Starstone fails to articulate with meaningful analysis how such conduct is at play or how the

19

results complained about will ensue—much less support these conclusory assertions with citation to facts. (See *Lister v. Bowen* (2013) 215 Cal.App.4th 319, 337.)

As Scaffold puts it, "to the extent we can discern an argument about double recovery, it appears Starstone is concerned that attorney Roth might assist Scaffold Solutions to prove that Hydra was contributorily negligent, thus reducing Starstone's claim on Moreci's settlement under *Witt*." Even so, without more information explaining how Boxer Gerson's representation will result in a double recovery, one can only surmise that there might be duplication. But surmise obviously "is not sufficiently concrete and is highly speculative. Such a highly speculative and tactical interest does not meet the standing requirements." (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1359.)

Starstone also asserts it had standing to bring a disqualification motion because Boxer Gerson may have learned confidential information from Moreci that it will use to Starstone's disadvantage in the present case. To no avail. Starstone has adduced no evidence that any of *its* confidential or privileged information has been given to Boxer Gerson. Thus, any informational advantage gained by opposing counsel is insufficient to support standing in the absence of a " 'legally recognizable expectation of confidentiality' " in any information between Moreci and Boxer Gerson, as discussed above. (*DCH Health Services*, *supra*, 95 Cal.App.4th at p. 832.)

Starstone's complaint about counsel's possession of confidential information boils down to a concern that the information will give counsel an "unfair, improper advantage in litigation" over Starstone. But, as explained in *Colyer*, *supra*, 50 F.Supp.2d at p. 973, an "abstract interest in winning or losing this litigation is not legally cognizable. All plaintiffs have a stake in winning the cases they file but this tactical 'interest' " cannot support a basis

20

for standing. Furthermore, Starstone's argument is a specious basis to support disqualification because even if Moreci gave Boxer Gerson confidential information that is potentially harmful to his employer, this would still be true if Boxer Gerson were replaced with new counsel.

Starstone next suggests that Moreci's failure to give timely notice of his personal injury complaint supplies a separate basis for standing. The parties agree Moreci did not give Starstone notice of his complaint against defendants "forthwith" as required by Labor Code section 3853.[6] Boxer Gerson later notified Starstone of the lawsuit, as well as settlement negotiations, when it provided Starstone's attorneys with the then upcoming mediation date. Starstone complains that the "late notice" in essence prevented it from intervening earlier in the action and placed it at a disadvantage because its adversaries were able to engage in discovery and develop the evidence in Starstone's absence. While we agree with Starstone that Moreci failed to comply with Labor Code section 3853, Starstone's argument conflates *any* injury or harm to Starstone with the "legally cognizable" injury that is required for standing. Moreover, to the extent Starstone's challenge to the late notice is based on its informational disadvantage in the case, we explained above this is an "abstract interest in winning or losing this litigation [that] is not legally cognizable." (*Colyer, supra*, 50 F.Supp.2d at p. 973.)

Furthermore, the alleged conflict in this case is distinguishable from cases that have found standing under the exception based on a "manifest and

---

[6] Labor Code section 3853 provides in part: "If either the employee or the employer brings an action against such third person, he shall forthwith give to the other a copy of the complaint by personal service or certified mail. Proof of such service shall be filed in such action."

glaring" or "open and obvious" ethical breach.  (*Colyer*, *supra*, 50 F.Supp.2d at p. 969.)  *Colyer* drew this exception from *In re Yarn Processing*, *supra*, 530 F.2d 83 (see *Colyer*, at pp. 969, 971–972), and *In re Yarn Processing* contemplated the exception in the context of four specific cases:  *Emle Industries, Inc. v. Patentex, Inc.* (2d. Cir. 1973) 478 F.2d 562; *Porter v. Huber* (W.D. Wash. 1946) 68 F.Supp. 132; *Empire Linotype School, Inc. v. United States* (S.D.N.Y. 1956) 143 F.Supp. 627; and *Estates Theatres, Inc. v. Columbia Pictures Industries, Inc.* (S.D.N.Y. 1972) 345 F.Supp. 93.  (See *In re Yarn Processing*, *supra*, 530 F.2d at p. 89.)  Each of these cases is distinguishable.

Emle Industries, Inc. v. Patentex, Inc.*, *supra*, 478 F.2d 562, as described by *In re Yarn Processing*, involved a motion to disqualify an attorney made by a corporation that the former client of the attorney controlled.  (*In re Yarn Processing*, *supra*, 530 F.2d at p. 89.)  Because that motion was essentially made by the former client, *Emle Industries, Inc. v. Patentex, Inc.* is materially different from the present case.

In *Porter v. Huber*, *supra*, 68 F.Supp. at pp. 132–135, the court, as opposed to a third party, challenged the attorney's change of sides where the defendant's attorney had previously been employed by the plaintiff in a legal capacity and was the superior of another attorney who had worked on a dispute that formed the basis of the case.

In *Empire Linotype School, Inc. v. United States*, *supra*, 143 F.Supp. at pp. 631–632, before changing sides to represent the plaintiff, the attorney had prepared, and even signed on behalf of the defendant, some of the most crucial documents that were the heart of the lawsuit.

Finally, in *Estates Theatres Industries, Inc. v. Columbia Pictures, Inc.*, *supra,* 345 F.Supp. at p. 93, the plaintiff who was the current client of an

22

attorney, named the former client as a co-conspirator with the defendant, even though the former client was not itself a defendant in the case. According to the *In re Yarn Processing* court, when the former client appeared by counsel to argue for disqualification, even though he was not the formal moving party, the "adverse nature" of the former client's interests, relative to the new client's, were so "open and obvious" that they "confronted the court with a plain duty to act." (*In re Yarn Processing, supra*, 530 F.2d at p. 89.)

Those cases, unlike here, involved a disqualification motion that was essentially made through the former client, even if not formally filed by that client. The conflicts that arose were based on a genuine "change of sides," which involved the target attorney becoming directly adverse to a former client.

For all of the reasons above, the exception to the general rule for manifest and glaring conflicts, whatever that exception's breadth and content, does not encompass this case. Without any legally cognizable interest, we are left with an opposing party's perception of a conflict arising from Boxer Gerson's representation of Scaffold. But any harm to Scaffold or Moreci stemming from a breach of the duty of loyalty in any way by their attorneys is, to echo the *Great Lakes* court, "of no concern" to Starstone. (*Great Lakes, supra*, 186 Cal.App.4th at p. 1358.) Instead, as the trial court correctly found, the thrust of Starstone's motion rests on a purported effort to safeguard the integrity of the judicial system and the "scrupulous administration of justice." "None of these lofty values, however, implicates any personal right of [Starstone] which is burdened by the alleged conflict of interest." (*Colyer, supra*, 50 F.Supp.2d at p. 973.)

In sum, the trial court properly concluded Starstone had no standing to bring the disqualification motion. And lack of standing alone is sufficient for the trial court to deny that motion. (See *Great Lakes*, *supra*, 186 Cal.App.4th at p. 1359.)

Superimposed on all of the above is that even if Boxer Gerson were disqualified, Moreci would be free to hire a new attorney to defend Scaffold pursuant to the settlement agreement and to continue pursuing interests that are inimical to Starstone's—leaving Starstone in the same situation. Because disqualification would have no effect on the alleged harms, Starstone has sought the wrong legal remedy by bringing a disqualification motion.

## DISPOSITION

The order denying the motion to disqualify counsel is affirmed. Scaffold is awarded costs on appeal.

_____
Richman, Acting P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.


*Moreci v. Scaffold Solutions, Inc* (A161193)

Filed 10/18/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| VINCE MORECI, Plaintiff, v. SCAFFOLD SOLUTIONS, INC., Defendant and Respondent; STARSTONE NATIONAL INSURANCE COMPANY, Intervener and Appellant. | A161193 (San Francisco County Super. Ct. No. CGC17558931) |

BY THE COURT:

The opinion in the above-entitled matter filed on September 27, 2021, was not certified for publication in the Official Reports. For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Dated: _____        _____
                                                            Richman, Acting P.J.

1

Court:  San Francisco County Superior Court

Trial Judge:  Hon. Ethan P. Schulman

England Ponticello & St.Clair; Barry W. Ponticello, Renee C. St.Clair, for Plaintiff-in-Intervention and Appellant

Joseph A. Hearst, Gary Roth, for Defendant and Respondent.

*Moreci v. Scaffold Solutions, Inc* (A161193)